Argued and submitted February 10, reargued September 7, affirmed
October 5, 1982

STATE OF OREGON,
*Respondent on review,*

*v.*

DONNA JEAN BUTTREY,
*Appellant on review.*

(Nos. C80-10-33782, CC78-424,
CA A20616, SC 28155)

651 P2d 1075

John Daugirda, Deputy Public Defender, Salem, argued and reargued the cause for appellant on review. With him on the brief was Gary D. Babcock, Public Defender, Salem.

David B. Frohnmayer, Attorney General, Salem, argued and reargued the cause for respondent on review. With him on the brief were William F. Gary, Solicitor General, and Rudolph S. Westerband, Assistant Attorney General, Salem.

PETERSON, J.

Linde, J., filed a dissenting opinion.

## PETERSON, J.

In *State v. Stroup,* 290 Or 185, 620 P2d 1359 (1980), we held that in a prosecution for driving while suspended, ORS 487.560, where the suspension is for failure to appear in court, the state is not required to prove, as an element of the offense, that the order of suspension was mailed to defendant. We also held that procedural due process did not require, as an element of the offense, proof of mailing of the notice of suspension, because the defendant, before the suspension, was provided an opportunity for a hearing and given notice that failure to appear at the hearing might result in the suspension of driving privileges. 290 Or at 197-202.

Anticipating the present case, we stated:

"As also previously stated, this is a case in which defendant's driver's license was suspended for 'failure to appear.' Whether the same result would follow in cases in which drivers' licenses are suspended for other reasons and whether in such cases the state would be required by due process to offer evidence of constructive notice as a part of its case in chief is not before the court for decision in this case." 290 Or at 202.

We noted:

"Defendant has not contended in this case that he is denied due process by the failure of ORS 487.560 to require a culpable mental state to support a conviction for 'driving while suspended,' thus making it a strict liability crime."[1] *Id.* at 202 n 14.

This is a case in which the defendant's driver's license was suspended for one of the "other reasons" referred to in *Stroup* and we are squarely faced with the two "open" questions from *Stroup:*

---

[1] In *State v. Stroup,* 290 Or 185, 620 P2d 1359 (1980), we also observed:

"Other Supreme Court cases on related issues have language strongly supporting the constitutionality of strict liability crimes, at least where 'public welfare offenses,' such as traffic violations, are involved. *See Lambert v. California,* 355 US 225, 228 (1957); *Morisette v. United States,* 342 US 246, 262 and n 20 (1952). This is in contrast to the recognition of a strong presumption that crimes having their origin in the common law must have a mens rea element. *See United States v. United States Gypsum Co.,* 438 US 422, 436-38 (1978)." 290 Or at 202.

1. In a prosecution for driving while suspended, do Oregon statutes require the state to prove a culpable mental state, i.e., that the defendant, at the time of the offense, had actual or constructive knowledge that her license had been suspended?

2. Was defendant denied Fourteenth Amendment due process either because she was convicted absent any showing of mens rea or because ORS 482.560 unconstitutionally shifts the burden of disproving an element of the crime, knowledge, to the defendant?

The defendant was charged with violating ORS 487.560. The information alleged:

> "The said defendant, on or about October 23, 1980, in the County of Multnomah, State of Oregon, did unlawfully and feloniously drive a motor vehicle upon a highway and other premises open to the public at a time when the said defendant's license to drive a motor vehicle and right to apply for a license to drive a motor vehicle in this state were suspended by the court and by the Motor Vehicles Division of the Department of Transportation and were revoked by the Motor Vehicles Division of the Department of Transportation, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The case was tried to the court without a jury. The defendant stipulated that she was driving upon a highway. A copy of the order suspending her driver's license was received in evidence. The driving occurred during the suspension period. Appended to the suspension order was a certificate that the copy of the suspension order was correct and that the order "was mailed to the official address of record as recorded on the Motor Vehicles Division record."[2]

---

[2] ORS 482.570 provides for mailing:

> "When the division, as authorized or required, suspends, revokes or cancels a license or the right to apply for a license to operate motor vehicles, it shall give notice of such action to the person whose license or right is affected. The notice shall state the nature and reason for the action and, in the case of a suspension, whether it was ordered by a court. Service of the notice is accomplished either by mailing the notice by certified mail restricted delivery, return receipt requested, to the person's address as shown by division records, or, by personal service in the same manner as a summons is served in an action at law."

No return receipt was offered in evidence and there was no evidence, other than the suspension order itself and the certificate thereon, that the defendant had received the notice of suspension. The exhibit was received without objection.[3]

The defendant moved for acquittal asserting that there was no proof of mens rea and that the "shifting of the burden" under ORS 487.560(2) (set forth below) was unconstitutional. The trial court denied the motion and found the defendant guilty of a class C felony, stating:

> "THE COURT: I find that the Plaintiff, the State, has proven the elements of the offense beyond a reasonable doubt — driving by the Defendant on the date alleged on a public street or road in Multnomah County and at a time when the Defendant's license to drive was suspended as a result of a conviction for driving under the influence of intoxicating liquor, and therefore I will find the Defendant guilty of felony driving while suspended."

The court suspended imposition of sentence and placed the defendant on five years' probation and required her to serve one year in the county jail. The Court of Appeals affirmed the conviction from the bench. 54 Or App 40, 642 P2d 704 (1981).

## A CULPABLE MENTAL STATE IS NOT AN ELEMENT OF DRIVING WHILE SUSPENDED. ORS 487.560

■ Historically, criminal liability has required both an act and a culpable mental state. In the past century, legislatures have passed numerous statutes which have imposed criminal liability unaccompanied by fault. Strict liability statutes have been passed because of the difficulty in proving intent, knowledge, recklessness or negligence, and because of a legislative perception that evil should be eradicated, even at the risk of convicting blameless defendants. W. LaFave and A. Scott, Handbook on Criminal Law 218 (1972). Oregon has enacted such statutes.[4]

---

[3] *Cf. State v. Harris,* 288 Or 703, 609 P2d 798 (1980) (certificate that suspension order "was in full effect" held inadmissible hearsay). We need not consider the inferences, if any, which arise from the DMV certification appended to the suspension order.

[4] *See generally* Comment, *Strict Liability and Criminal Sanctions: The 1971 Revisions to the Oregon Criminal Code,* 13 Willamette L J 365 (1977).

The defendant claims that there are three elements to the crime of driving while suspended, (1) driving a vehicle upon a highway, (2) with a suspended license, (3) with knowledge of the suspension. For the purposes of this opinion we will assume that there is no evidence that the defendant had actual or constructive knowledge that her license had been suspended. The decision turns on an analysis of the statute defining the crime, ORS 487.560 (which was enacted in 1975 as part of a comprehensive motor vehicle code reform), and general provisions in the Oregon Criminal Code of 1971, ORS chapter 161.

The Oregon Criminal Code was revised in 1971. The drafters of the law and the legislature were very much aware of "strict liability" crimes. In the "purposes" section of the code, ORS 161.025(1)(d), this legislative purpose is stated:

"(1) The general purposes of chapter 743, Oregon Laws 1971, are:

"* * * * *.

"(d) To define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault."

The Criminal Code sought to create a uniform system for determining offense classifications and culpability requirements. *See* Comment, *Strict Liability and Criminal Sanctions: The 1971 Revisions to the Oregon Criminal Code,* 13 Willamette L Rev 365, 366-67 nn 9, 10 (1977). The Criminal Code includes provisions defining a "culpable mental state," ORS 161.085, and describing when a culpable mental state must be proved, ORS 161.095, ORS 161.115, and ORS 161.105. ORS 161.085 lists and defines four culpable mental states—intentionally, knowingly, recklessly and criminal negligence—each of which require a form of awareness or failure to be aware as a requirement of criminal liability.

A culpable mental state is generally required for criminal liability to be imposed. ORS 161.095(2) provides:

"(2) Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable

mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.115(2) provides:

"(2) Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

ORS 161.105(1)(b), the "exception" statute referred. to in ORS 161.095(2) and ORS 161.115(2), states:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

The criminal statute under which the defendant was charged and convicted, ORS 487.560, is outside the Criminal Code. It provided:

"(1) A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division or revoked by the division or if he drives a motor vehicle outside the restrictions of a license issued under ORS 482.475 or 482.477.

"(2) In a prosecution under subsection (1) of this section, it is an affirmative defense that:

"(a) An injury or immediate threat of injury to human or animal life and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question; or

"(b) The defendant had not received notice of his suspension or revocation as required by ORS 482.570 or in the manner provided in paragraph (c) of subsection (3) of this section.

"(3) The affirmative defense under paragraph (b) of subsection (2) of this section shall not be available to the defendant if:

"(a) The defendant refused to sign a receipt for the certified mail containing the notice; or

"(b)   The notice could not be delivered to the defendant because he had not notified the division of his address or a change in his residence as required by subsection (3) of ORS 482.290; or

"(c)   At a previous court appearance, the defendant had been informed by a trial judge that the judge was ordering a suspension of the defendant's license, permit or right to apply; or

"(d)   The defendant had actual knowledge of the suspension or revocation by any means prior to the time he was stopped on the current charge.

"(4)   Any of the evidence specified in subsection (3) of this section may be offered in the prosecution's case in chief.

"(5)   Except as provided in subsection (6) of this section, driving while suspended or revoked is a Class A misdemeanor.

"(6)   Driving while suspended or revoked is a Class C felony if the suspension or revocation was the result * * * of a conviction for any of the following offenses:

"* * * * *.

"(f)   Driving while under the influence of intoxicants."

Although the parties agree that ORS 487.560 is "an offense defined by a statute outside the Oregon Criminal Code," they do not agree that the statute "clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof." Our conclusion is that the language of ORS 487.560 itself clearly indicates a legislative intent to dispense with a culpable mental state requirement, and the legislative history puts the matter beyond question.

The key provisions, insofar as the question before us is concerned, are subsections (1), (2) and (3). Subsection (1) defines the crime. Two elements are stated. Driving a motor vehicle upon a highway. During a period when the license has been suspended. Subsection (1) does not prescribe a culpable mental state, but suggests that if the two elements are shown, proof of those elements alone is sufficient to convict. Subsection (1), by itself, does not "clearly [indicate] a legislative intent to dispense with any culpable mental state requirement." Doubt is dispelled, however, by

subsections (2) and (3). Subsection (2) lists two possible "affirmative defenses," one in the nature of a choice of evils defense, section (2)(a), the other relating to the lack of receipt of notice of the suspension, section (2)(b).

The term "affirmative defense" is defined in the Criminal Code as follows:

"When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971, is raised at a trial, the defendant has the burden of proving the defense by a preponderance of the evidence." ORS 161.055(2).

The legislative intent is clear: The state makes a prima facie case upon proof of the two elements in ORS 487.560(1), without proof of a culpable mental state, i.e., without proof of any knowledge by the defendant of the license suspension. The defendant can avoid liability by establishing the affirmative defense by a preponderance of the evidence. ORS 161.055(2). The state, in turn, can avoid the effect of the notice defense afforded by ORS 487.560(2)(b) by establishing beyond any reasonable doubt that the defendant "refused to sign a receipt for the certified mail containing the notice," ORS 487.560(3)(a), or that "[t]he notice could not be delivered * * * because he had not notified the division of his address or a change in his residence as required by subsection (3) of ORS 482.290,"[5] ORS 487.560(3)(b), or that the defendant had been informed by a trial judge that the judge was ordering a suspension of the license, ORS 487.560(3)(c), or that the defendant had actual knowledge of the suspension, ORS 487.560(3)(d).

Subsections (1), (2) and (3) of ORS 487.560, considered together and with ORS 161.055(2) (which defines an affirmative defense), set forth a procedure for the blameless defendant to establish a defense. The statutes clearly indicate that the legislature intended that the state, in its

[5] ORS 482.290(3) provides:

"(3) Persons licensed as operators or combined operator-chauffeurs under this chapter shall notify the division of any change of residence from that noted on their license as issued by the division. Notice shall be given by mail or in person within 30 days after the date of the change. The notice shall be written and shall indicate the old and new residence address and the number of the license held. Upon receiving the notice, the division shall note the change of address on its records. * * *"

case in chief, need not prove any culpable mental state, but that the defendant might avoid conviction for conduct which is otherwise criminal by establishing one of the defenses enumerated in ORS 487.560(2)(b).[6] As discussed below, if the state is required to prove a culpable mental state as an element of the crime, then subsections (2)(b) and (3)(d) of the statute are surplusage.

The legislative history confirms this analysis. It reveals that the legislature was concerned with a massive social problem. Suspended drivers constituted a dangerous class of drivers, causing carnage on the highway and clogged courts. Prosecutions were difficult. The legislature believed that this class of drivers caused unnecessary human suffering and constituted, as a class, a disproportionate danger. The legislature was so concerned with the risk to person and property that it wanted to make certain conduct punishable as a crime, without fault.

Donald Paillette, Project Director of the Interim Committee on Judiciary, testified at a House Judiciary Committee meeting on May 5, 1975. The Minutes summarize his testimony as follows:

"The existing statute covering driving while suspended would be repealed * * *. One of the changes made was with respect to the question of whether the defendant knew of his suspension. Proof that he knew of his suspension would not be an element of the offense but failure to receive notice would be an affirmative defense which would shift the burden to the defendant to establish the defense by a preponderance of the evidence." Minutes, House Committee on Judiciary, May 5, 1975, at 2.

In *State v. Stroup,* 290 Or 185, 195, 620 P2d 1359 (1980), we also relied upon the legislative history. Our comments there are apposite here:

"More importantly, legislative history subsequent to the preparation of the Commentary shows a contrary legislative intent than that contended by defendant. Mr. Donald Paillette, Project Director of the Proposed Oregon Vehicle Code, explained the provisions of the proposed code

---

[6] This conclusion is consistent with the decision of the Court of Appeals in *State v. Taylor,* 28 Or App 815, 816-17, 561 P2d 662 (1977). *But see State v. Monaco,* 55 Or App 122, 126 n 5, 637 P2d 221 (1981).

to the Judiciary Committee. On January 23, 1975, testifying before the Senate Judiciary Committee and explaining § 92, Mr. Paillette stated:

" 'What is being put forth in this section is that the burden is going to be shifted so long as there has been a showing that there is a suspension and that the defendant in question was driving at a time when he was suspended or revoked.' Minutes, Senate Committee on Judiciary, January 23, 1975, page 5.

"This supports the conclusion that the legislature intended that the state need only prove suspension and driving while suspended, rather than an intent that proof of mailing must also be shown by the state in its case in chief." 290 Or at 195 n 9.[7]

The statute and the legislative history convince us that the legislature was so concerned with the societal injury arising from the operation of automobiles by drivers whose licenses had been suspended that it intended to create a strict liability crime, a crime which would require no proof of knowledge as an element of the offense. However, to ameliorate the potential unfairness to a driver who had not received notice of the suspension as required by ORS 482.570, or who had not received notice in the manner provided in ORS 487.560(3)(c), the legislature allowed such a defendant to establish a *limited* defense of lack of notice. But the limited defense was unavailable if the state could establish that the defendant, "by any means," had actual knowledge of the suspension. ORS 487.560(3)(d). The legislature intended that the defendant could avoid criminal liability only if he or she could prove lack of notice, as provided by subsection (2)(b), and that even that limited exception would not be available if the defendant had actual knowledge of the suspension. ORS 487.560(3)(d).

---

[7] The dissent would hold that the very action of creating an affirmative defense based upon a lack of notice (which, under ORS 161.055(2) imposes ·upon the defendant "the burden of proving the defense by a preponderance of the evidence") creates an opposite result—the creation of a third element the state must prove beyond a reasonable doubt, as part of its case in chief. Although the legislature sought to generally "limit the condemnation of conduct as criminal when it is without fault," ORS 161.025(1)(d), the legislature reserved the power to make conduct criminally punishable, absent fault, by expressly providing for offenses outside the Oregon Criminal Code which were punishable as crimes without any showing of a culpable mental state, ORS 161.105(1)(b). The legislature knew the difference between the types of crimes that were being created.

The dissenters assert that *knowledge* of the suspension is an element of the crime; that the defendant can establish a defense if he or she can prove that he or she had not received proper *notice;* and that the driver loses this affirmative defense if the state proves that he or she had knowledge of the suspension. If, as claimed by the dissent, some form of *knowledge* is an element of the crime, then the application of the notice subsections, (2)(b) and 3(d), results in a circuity. Under the dissenters' analysis the state would have to prove *knowledge* as part of its case-in-chief. If the defendant could establish either of the limited notice defenses permitted under subsection (2)(b), he or she could be acquitted *unless* the state established (under subsection (3)(d)) the very fact already proved by the state—that the defendant "had *knowledge* of the suspension." The very evidence offered by the state to prove its case would also (1) disprove the defendant's evidence offered to support a (2)(b) affirmative defense and (2) establish the state's (3)(d) rebuttal to the defendant's affirmative defense. The fallacy of the dissent's analysis is apparent. The legislature could not have intended that the very proof of the element of knowledge would at the same time disestablish the affirmative defense referred to in subsection (2)(b) and establish the existence of subsection (3)(d) knowledge.[8] If knowledge need be proved, then the notice provisions, subsections (2)(b) and (3)(d), are surplusage. The legislature intended that the statute be given effect as it was written.

ORS 487.560 and the legislative history clearly indicate a legislative intent to dispense with any requirement that a culpable mental state be shown. The defendant was properly convicted under Oregon law. We turn, therefore, to the defendant's claim that the statutory imposition

---

[8] Consider the instructions which the trial court would give to the jury, if the dissent is correct. (The instructions in this example are greatly shortened to illustrate the point.)

"The state must prove, beyond any reasonable doubt, that the defendant had knowledge of the license suspension.

"But if the defendant proves, by a preponderance of the evidence, that she had not received notice of the suspension as required by ORS 482.570 or in the manner provided in ORS 487.560(3)(c), she should be acquitted unless you find, beyond any reasonable doubt, that the defendant had knowledge of the license suspension."

of the burden of proving nonreceipt of the notice of suspension violates the Due Process Clause of the Fourteenth Amendment.

## ORS 487.560 DOES NOT VIOLATE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

■ Defendant makes two Fourteenth Amendment contentions. First, she cites *Lambert v. California,* 355 US 225, 78 S Ct 240, 2 L Ed 2d 228 (1957), asserting that "as a matter of due process * * * proof of knowledge is a necessary element of the crime." In *Lambert,* the court held that a city ordinance which, *inter alia,* made it a crime for any convicted felon to be or remain in Los Angeles for more than five days without registering with the police department, was invalid under the Fourteenth Amendment. The opinion contains little explanation of the holding, and other Supreme Court opinions, some of which are referred to below, make it clear that the holding is limited to the facts there presented.

The Supreme Court of the United States, in applying the federal constitution, has generally refused to interfere with the historical state power to create strict liability crimes.

"* * * The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical view of the nature of man. This process of adjustment has always been thought to be the province of the States." *Powell v. Texas,* 392 US 514, 536, 88 S Ct 2145, 20 L Ed 2d 1254, 1269 (1968) (plurality opinion).

"* * * The legislatures have always been allowed wide freedom to determine the extent to which moral culpability should be a prerequisite to conviction of a crime. * * *" *Id.* 392 US at 545, 20 L Ed 2d at 1274 (Black, J., concurring).

*See United States v. Balint,* 258 US 250, 42 S Ct 301, 66 L Ed 604 (1922) (affirming conviction for selling narcotics with no evidence that defendants knew they were selling narcotics); *United States v. Dotterweich,* 320 US 277, 64 S Ct 134, 88 L Ed 48 (1943) (affirming conviction for shipping misbranded and adulterated drugs absent any showing

that he intentionally or negligently engaged in the proscribed conduct). *See also Smith v. California,* 361 US 147, 150, 80 S Ct 215, 4 L Ed 2d 205, 209 (1959). Other post-*Lambert* decisions have upheld convictions based upon strict liability statutes. In *United States v. Freed,* 401 US 601, 91 S Ct 1112, 28 L Ed 2d 356 (1971), the court upheld the constitutionality of a statute which made it unlawful for any person to possess a firearm that has not been registered to him by the transferor. Observing that *Lambert* represented an "extreme" view, the court upheld the statute as "a regulatory measure in the interest of the public safety," 401 US at 609 (citing *Dotterweich*).

In January, 1982, the court indicated that Lambert's application had been "limited." In *Texaco, Inc. v. Short,* 454 US 516, 102 S Ct 781, 70 L Ed 2d 738, (1982), the court stated:

> "* * * Lambert concerns the mens rea that is necessary before the State may convict an individual of crime. See United States v Freed, 401 US 601, 28 L Ed 2d 356, 91 S Ct 1112; United States v. International Minerals & Chemical Corp., 402 US 558, 29 L Ed 2d 178, 91 S Ct 1697. Its application has been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as 'an isolated deviation from the strong current of precedents—a derelict on the waters of the law.' 355 US at 232, 2 L Ed 2d 228, 78 S Ct 240." 454 US at 538 n 33, 102 S Ct at 796 n 33, 70 L Ed 2d at 756 n 33.

Given the legislative power to create crimes in which a culpable mental state need not be shown, *Powell, Dotterweich, Smith,* and *Balint* indicate that the creation of criminal strict liability for driving while suspended is constitutionally permitted.[9]

---

[9] There is considerable criticism of strict liability crimes among commentators. *See* J. Hall, General Principles of Criminal Law (2d ed 1960); Hall, *Negligent Behavior Should Be Excluded from Penal Liability,* 63 Colum L Rev 632 (1963); Hart, *The Aims of the Criminal Law,* 23 Law & Contemp Probs 401 (1958); Hippard, *The Unconstitutionality of Criminal Liability Without Fault: An Argument for a Constitutional Doctrine of Mens Rea,* 10 Hous L Rev 1039 (1973); Packer, *The Model Penal Code and Beyond,* 63 Colum L Rev 594 (1963); Packer, *Mens Rea and the Supreme Court,* 1962 Sup Ct Rev 107; Sayre, *Public Welfare Offenses,* 33 Colum L Rev 55 (1933); Stuart, *The Need To Codify Clear, Realistic, and Honest Measures of Mens Rea and Negligence,* 15 Crim L Q 160 (1973).

Defendant's second Fourteenth Amendment contention is that the affirmative defense provisions of ORS 487.560(2)(b) unconstitutionally shift to her the burden to produce, as part of her affirmative defense, an element of the state's case. This case does not involve the shifting of proof of any element of the crime, for as we held above, knowledge of the suspension is not an element of the crime. In *State v. Stroup, supra,* this court rejected a similar claim.

"Defendant further contends that 'where constructive notice is required as a matter of due process, shifting the burden of proof on that issue to the defendant is unconstitutional,' * * *.

"* * * * *.

"In this case, defendant's due process argument * * * is dependent upon a determination that 'constructive notice' of the order suspending defendant's driver's license was an 'essential element,' then shifting the burden of proof on that issue to defendant by requiring him to disprove 'notice' would be unconstitutional. * * *" 290 Or at 199-200.

Quoting from *Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977), we stated:

"In *Patterson* the Supreme Court recognized initially that:

"* * * it is normally "within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," and its decision in this regard is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."' (Citations omitted) (432 US at 201-202)

"The Supreme Court also made it clear in *Patterson* that just because a statute provides that proof of a certain fact constitutes an affirmative defense, it does not follow that those facts are an element of the crime with the burden of proof upon the state. * * *" 290 Or at 200-01.

*But see* J. Hall, General Principles of Criminal Law ch X (2d ed 1960); Harring, *Liability Without Fault: Logic and Potential of a Developing Concept,* 1970 Wis L Rev 1202, 1207; Nemerson, *Criminal Liability Without Fault: A Philosophical Perspective,* 75 Colum L Rev 1517 (1975); Wasserstrom, *Strict Liability in the Criminal Law,* 12 Stan L Rev 731 (1960).

■     There is no constitutional bar to the creation of a strict liability offense while at the same time providing for excuse or mitigating factor by way of an affirmative defense. It was within the legislature's power to create this strict liability crime with no affirmative defense.[10] The inclusion of the ORS 487.560(2) affirmative defense does not operate to thwart the goal the legislature clearly sought to achieve. We therefore affirm.

The Court of Appeals is affirmed.

Linde, J., filed a dissenting opinion in which Lent, C. J., and Roberts, J., joined.

**LINDE, J.,** dissenting.

The majority holds that the Oregon legislature made a felon of a person who drives a motor vehicle on an Oregon highway when his or her license to do so has been suspended, whether the driver knows of the suspension or not. According to the majority, if unknown to Mrs. Buttrey someone in the Motor Vehicles Division suspended or revoked her driver's license, even by an error, she nevertheless engaged in a crime that might send her to a prison if she drove her car in the good faith belief that she had a valid license.

The legislature did no such thing. The legislature did something very different: It rearranged the burdens of litigating in a subsequent trial whether the driver had notice or otherwise knew of the suspension. The statutes do not say that the driver's knowledge of the suspension is not material to her guilt at the time she actually drives the car, in other words when the alleged crime is committed. The rearrangement of the burden at trial does not make the act of driving under such circumstances a crime that involves no culpable mental state, a crime that is committed in ignorance of a license suspension. Yet this is what the majority would have us believe.

---

[10] On the matter of burden of proof, affirmative defenses and presumptions in a due process context, *see* Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview,* 79 Yale L J 165 (1969); Fletcher, *Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases,* 77 Yale L J 880 (1968); Note, *Affirmative Defenses and Due Process: The Constitutionality of Placing a Burden of Persuasion on a Criminal Defendant,* 64 Geo L J 871 (1976).

It is crucial not to confuse two different questions: one, whether knowledge of the suspension is an element of the crime at the time of its commission, and the other, whether this knowledge is an element of the state's proof at the time of trial. The majority opinion goes to elaborate lengths to show that the legislature intended to free the prosecution from having to prove that a defendant knew of the suspension. The demonstration is misdirected; it is not disputed that the state wished to free itself from that burden in prosecutions for "driving while suspended" and persuaded the legislature to shift the burden by making failure to notify the defendant an affirmative defense. The only issue is what retaining ignorance of the suspension as a defense, in other words, retaining the material element of knowledge at the time of driving, means for the application of the Oregon Criminal Code of 1971 and its constitutionality.

As the majority recognizes, the 1971 code took great pains to spell out its commitment to the principle that criminal guilt and serious criminal penalties should not be imposed for conduct that is entirely free from any blameworthy mental state. The code expressly states its purpose to define the act or omission "and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault." ORS 161.025(1)(d). The report of the Oregon Criminal Law Revision Commission (July 1970) at page 11, stated with respect to the culpability provisions:

"Perhaps the single most basic part of the Code is the culpability part of it. . . .

"The Commission follows the Model Penal Code in expressing a policy adverse to use of "strict liability" concepts in criminal law, whenever the offense carries a possibility of sentence of imprisonment.

"This position relates not only to offenses defined by the criminal code itself, but covers the entire body of state law, so far as penal sanctions are involved."[1]

---

[1] The report continues with this reference to the Model Penal Code:

"As noted by the Model Penal Code commentators, in the absence of minimal culpability, the law has neither a deterrent nor corrective nor an incapacitative function to perform. They support this approach by stating:

This policy against strict liability crimes was enacted in exceptionally explicit and systematic provisions of the criminal code, ORS 161.095-161.115. Their object was to limit criminal offenses to those committed with a culpable mental state, and to reduce misconduct without culpability to the level of noncriminal "violations" which would be punishable only by fines and which would require a culpable mental state only if a statute so prescribed.[2] The code recognized, however, that the legislature might expressly provide for strict liability for some among the many offenses created by penalty provisions of statutes outside the criminal code. It therefore provided in ORS 161.105(1)(b) for an exception from the policies prescribed

---

" 'It has been argued and the argument undoubtedly will be repeated, that absolute liability is necessary for enforcement in a number of areas where it obtains. But if practical enforcement cannot undertake to litigate the culpability of alleged derivation from legal requirements, we do not see how the enforcers rightly can demand the use of penal sanctions for the purpose. Crime does and should mean condemnation and no court should have to pass that judgment unless it can declare that the defendant's act was wrong. This is too fundamental to be compromised. The law goes far enough if it permits the imposition of a monetary penalty in cases where strict liability has been imposed.' (Tent. Draft No. 4, at 140 (1955))."

Certainly this policy is more consonant than strict liability with the command that criminal laws "shall be founded on the principles of reformation," Or Const art I, § 15.

[2] ORS 161.095(2) provides:

"Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.105 provides in part:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"(a) The offense constitutes a violation, unless a culpable mental state is expressly included in the definition of the offense;

". . . .

"(2) Notwithstanding any other existing law, and unless a statute enacted after January 1, 1972, otherwise provides, an offense defined by a statute outside the Oregon Criminal Code that requires no culpable mental state constitutes a violation."

ORS 161.115, so far as relevant here, provides:

"(2) Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

in ORS 161.095 and 161.115 when "[a]n offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof." It is this exception that the state invokes here.

Two things should be noted about this provision for overriding the code's strong policy against strict liability crimes. First, it requires a legislative intent to dispense with any requirement of culpability in committing the crime in question. ORS 161.105(1)(b) refers to such a requirement "for the offense," not "for proof of the offense." It refers to the elements of guilt, not of procedure. It is at the time of the accused's act that an offense either does or does not require a culpable mental state, not at the time of trial. Second, ORS 161.105(1)(b) requires that this legislative intent to dispense with any culpability in making one guilty of a crime must be "clearly" indicated. It is not to be implied. The statutory presumption is against such an intent. If the legislature means to create a genuine strict liability crime, not merely to lighten the state's burden of proof, it needs to say so "clearly." If the statute outside the criminal code does not clearly dispense with a culpable mental state in defining an offense, one of two consequences follows: The offense either constitutes a violation by virtue of ORS 161.105(2), or if a statute enacted after January 1, 1972, makes the offense a crime, then it nevertheless requires a culpable mental state by virtue of ORS 161.115(2).

Those are the purposes and the principles of construction prescribed by the criminal code with respect to culpability. In the light of these purposes and principles, does ORS 487.560 clearly show a legislative intent to dispense with requiring any culpable mental state for criminal guilt of driving when one's license has been suspended or revoked?

The majority cannot say that ORS 487.560 dispenses with the requirement in so many words, because it does not. So the opinion merely notes that the statute does not expressly prescribe a culpable mental state. That alone proves nothing, because this is exactly the situation for

which the authors of the code, in the cited sections, prescribed such a requirement unless the offense is to be a noncriminal violation.

Next the majority opinion turns to the fact that subsection (2)(b) of ORS 487.560 provides an affirmative defense if the defendant had not received notice of the license suspension or revocation either in a court appearance or by certified mail as prescribed in the Motor Vehicle Code.[3] Subsection (3) of the statute, in turn, negates this affirmative defense if the state can show that the defendant nevertheless had actual knowledge of the suspension or revocation or had himself prevented the delivery of notice of it. But far from supporting the conclusion that knowledge is immaterial to guilt of "driving while suspended," these provisions contradict it.

First, what the legislature made an affirmative defense in subsection 2(b) is a showing that defendant had not received proper notice. It is not the defendant's lack of actual knowledge. Second, however, the driver loses this affirmative defense and his guilt is established if the state proves that he knew that his license was suspended.

Why would the legislature establish this elaborate scheme of affirmative defense and rebuttal if the driver's knowledge of the license suspension at the time of the alleged offense is immaterial to his guilt? The obvious answer is that it would not do so. The legislature did not

---

[3] ORS 482.570 prescribes:

"When the division, as authorized or required, suspends, revokes or cancels a license or the right to apply for a license to operate motor vehicles, it shall give notice of such action to the person whose license or right is affected. The notice shall state the nature and reason for the action and, in the case of a suspension, whether it was ordered by a court. Service of the notice is accomplished either by mailing the notice by certified mail restricted delivery, return receipt requested, to the person's address as shown by division records, or, by personal service in the same manner as a summons is served in an action at law."

In the Oregon code, unlike the Model Penal Code, an affirmative defense must be proved by the defendant by a preponderance of the evidence. ORS 161.055(2). Compare Model Penal Code § 112(2)(a), which provides that when there is evidence supporting an affirmative defense (whether presented by the prosecution or defendant) that the prosecution carries the burden of disproving the defense beyond a reasonable doubt. See Model Penal Code § 1.13 (Tentative Draft No. 4) at 110 for commentary.

consider the driver's knowledge immaterial to his guilt. It wanted the accused to shoulder the burden of showing his lack of knowledge, and thereby his blamelessness, by proving that he was not notified of the suspension, though the defense would fail if he knew of the suspension apart from official notice.[4] Proper notification of the driver is not itself an element of the offense, and we so held in *State v. Stroup,* 290 Or 185, 620 P2d 1359 (1980). The reason for making it a potential defense, unless overcome by proof of actual knowledge (or frustration of notice by the accused), is that the driver's knowledge of the suspension remains material to the substantive issue: whether the driver was guilty of a crime when he drove the vehicle.[5]

The state argued, and the majority opinion repeats, that the legislature wished to deal with a "massive social problem" of controlling dangerous drivers whose licenses had been suspended. That is not in doubt, but it does not answer the question whether the legislature decided to do so by convicting nonculpable persons or by shifting to the driver the burden to show lack of culpability by proving failure of notice. Despite all the assertions about legislative history, the only relevant statement quoted by the state and by the majority opinion, that of Mr. Paillette to the House Judiciary Committee, did not say that a driver's knowledge of his license suspension was not an element of the offense. It explained that *proof* of knowledge was not an element. This merely identifies, it does not resolve, the ambiguity which renders ORS 487.560 less than "clearly" a decision to create a strict liability offense.

---

[4] The majority says that if evidence of defendant's knowledge remains part of the state's affirmative case, subsection (3)(b) becomes a "circuity." The answer is that (3)(b) shows that knowledge remains relevant to guilt or innocence; placing it procedurally after rather than before the defendant has shown lack of notification merely demonstrates that what the drafters of ORS 487.560 did was to manipulate the order of proof, not to create a strict liability crime.

[5] The state was unable to offer this court any other explanation why lack of proper notice of the suspension should be a defense if the driver's knowledge is immaterial to his guilt, except a suggestion that maybe acquittals for lack of proper notice were meant to encourage the Motor Vehicles Division to give such notice. Unrealistic as this suggestion is, it is completely contradicted by the fact that the statute continues by letting the state establish guilt by proof of actual knowledge irrespective of defective notice. This has nothing to do with policing effective notice by the Motor Vehicles Division.

The majority opinion emphasizes the intent of the legislature to free the state from the burden of proving that the driver was aware that he or she no longer had a valid license to do so. An intent to shift the burden of proof does not bring a statute within the exception of ORS 161.105(1)(b) so as to escape the principles of culpability stated in ORS 161.095 and 161.115(2). If the intended shift were otherwise effective, it would raise serious questions of due process to make a defendant disprove a mental element that remains material to guilt of the offense. But it is our obligation to avoid interpreting statutes in a way that creates serious doubts of their constitutionality. *State v. Blake,* 292 Or 486, 640 P2d 605 (1982); *Tharalson v. State Department of Revenue,* 281 Or 9, 13, 573 P2d 298 (1978). Fortunately that is not difficult here. There is no need to reach a constitutional issue, for ORS 161.115(2) itself continues to require proof of the driver's culpable mental state—in this case, the intent to drive a vehicle and the knowledge that her license to do so was suspended.

ORS 161.115(2) applies "[e]xcept as provided in ORS 161.105." And ORS 161.105 does not apply here. ORS 487.560 does not "clearly" or otherwise show that the legislature intended to dispense with a culpable mental state, knowledge of the suspension, in committing the crime of "driving while suspended." It intended to dispense with *proof* of that knowledge, unless the accused first proved that she did not receive official notice of the suspension. That is a very different thing. Both the defense of lack of notice and the state's opportunity to override that defense by showing actual knowledge prove that the legislature thought the driver's awareness of the license suspension very much a factor in her guilt or innocence.

Much more is at stake here than a technical parsing of statutes. The principle that no one who is innocent of blameworthy conduct should be punished for a serious crime is central to modern criminal law. It is expressly recognized in the Oregon Criminal Code of 1971. The legislature did not abandon this familiar principle of guilt in ORS 487.560 and make "driving while suspended" a crime even without knowledge of the suspension.

There is a great temptation in drafting laws, as elsewhere, to try to achieve two incompatible goals at the

same time. Here that temptation is to meet the state's difficulty in prosecuting drivers with suspended licenses by freeing the state from having to prove a driver's knowledge of the suspension, while continuing to make guilt depend on the driver's actual knowledge by proper notification or otherwise.

But the state cannot have it both ways. Perhaps, if it came to a choice, a legislature might be induced to say that a person becomes a felon when she drives in reliance on a license which, unknown to her, has been suspended. I am inclined to doubt it. In any event, that was not what legislators were asked to vote for in enacting ORS 487.560, and it is not what that statute says. They were offered a way to escape the choice by shifting the burden of proof. When the legislature decides to create a crime without any culpable mental element, it must make that decision unambiguously and "clearly," ORS 161.105(1)(b), or the appropriate mental element must be supplied, ORS 161.115(2), unless the offense is to be a violation punishable by no more than a fine, ORS 161.105(1)(a). Far from "clearly" dispensing with the driver's knowledge as an element of guilt, ORS 487.560 reaffirmed it in subsections (2)(b) and (3).

Knowledge that one's license is suspended, by notification or otherwise, thus remains material to guilt of "driving while suspended," and the case should have been tried accordingly. As it was not, the conviction should be reversed.

Lent, C. J. and Roberts, J. join in this dissenting opinion.