Argued and submitted December 12, 2000, reversed and remanded for new trial
May 23, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# NAKIA TIELEEN ANDREWS,
*Appellant.*

## 990645494; A108874

27 P3d 137

Garrett A. Richardson argued the cause and filed the brief for appellant.

Jennifer Scott Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a conviction, following a bench trial, for the unlawful carrying of a loaded firearm in violation of Portland City Code (PCC) 14.32.010(C). Defendant assigns error to the trial court's conclusion that the state was not required to prove that defendant knew that the firearm was loaded. We conclude that when a particular circumstance renders otherwise innocent conduct criminal, the existence of that circumstance is a material element for which the state must prove a culpable mental state, unless there is a clear legislative indication that such proof of *scienter* is not required. Here, the firearm's "loadedness" is such a material element, and there is no clear legislative indication of an intent to excuse proof of *scienter* with respect to that element. Consequently, the court erred in convicting defendant without determining whether the state had proved defendant's *scienter* as to "loadedness." We reverse and remand for a new trial.

On appeal from a judgment of conviction, we recount the facts in the light most favorable to the state. *State v. Rose*, 311 Or 274, 276, 810 P2d 839 (1991). On June 2, 1999, Portland Police Officer Dick saw a car with inoperable tail lights. After Dick turned on her overhead lights to stop the car, she saw defendant, who was a passenger in the back seat, make several quick movements. As Dick approached the car, defendant looked over her shoulder.

Dick asked the driver if she could search the car, and he consented. During her search, in the right rear passenger compartment where defendant had been sitting, Dick found a loaded, 9mm semiautomatic handgun sandwiched between two floormats. Dick then arrested defendant and advised her of her *Miranda* rights. Defendant subsequently acknowledged that her fingerprints would be on the gun and admitted that she had put the gun between the floormats when Dick first stopped the car. She explained, however, that the gun was on the left backseat floorboard when she first entered the car.

The state charged defendant with carrying a loaded firearm in violation of PCC 14.32.010(C), which provides:

"It is unlawful for any person on a public street or in a public place to carry a firearm upon his person, or in a vehicle under his control or in which he is an occupant, unless all ammunition has been removed from the chamber and from the cylinder, clip, or magazine."

The charging information alleged:

"The said defendant, on or about June 2, 1999, within the corporate limits of the said City of Portland, Oregon, did unlawfully and knowingly while on a public street carry a firearm in a vehicle in which she was an occupant, without having first removed all ammunition from the said firearm, in violation of [PCC 14.32.010(C).]"

Defendant waived her right to a jury trial, and the case was tried to the court. Dick testified as the state's only witness. Following Dick's testimony, defendant moved for a judgment of acquittal arguing, *inter alia*, that for defendant to be convicted of a crime for knowingly engaging in the conduct proscribed by PCC 14.32.010(C), the state must prove defendant's *scienter* not only with respect to carrying the firearm but also with respect to the fact that the firearm was loaded, and that the state had failed to do so. The trial court denied the motion, stating, "[A]t least there is some evidence to show that she could have had knowledge of the status of it being loaded."

Defendant did not present any evidence. During closing arguments, however, defendant reiterated her argument that the state must prove that she knew the gun was loaded. The state responded:

"[T]he State's burden is only to show that the defendant was carrying the firearm. The fact that it is loaded or unloaded, it is incumbent upon the defendant to make sure that any firearm that they are carrying is not, in fact, loaded as a result, just as it would be the defense burden to prove that or to show that through an affirmative defense that, in fact she had a concealed weapons permit for the gun or something similar to exonerate her from prosecution under this charge."

The trial court agreed with the state:

"The legal issue that we have to face, really, is whether or not the ordinance and the structure of it requires proof

> beyond a reasonable doubt that the defendant knew that the gun was loaded. And from looking at this ordinance, I'm not clear that that's required, that that's part of the State's burden. I could be wrong. I think it's sufficient to show that she had possession, control over the weapon while it was being carried in a public place or a public street. And the fact that it was loaded is unfortunate for her. It's incumbent on a person who is put in possession of that weapon and exercises control or dominion over it to make sure the ammunition has been removed. And, at their peril if they don't do that, they can be subject to some liability."

The court then found that defendant knowingly carried the firearm and that it was loaded and, consequently, found defendant guilty.

On appeal, defendant reiterates that, to obtain a criminal conviction for violation of PCC 14.32.010(C), the state was required to prove that defendant knew that the gun was loaded. The state responds that: (1) given the procedural posture of defendant's arguments to the trial court, her assignment of error may not be reviewable on appeal; and (2), in all events, the state was required to prove only that defendant knowingly carried the gun—and not that she knew it was loaded.

■ The state's reviewability concern, while understandable, is unavailing. As noted, this was a bench trial. In that context, the ruling to which defendant assigns error here is directly analogous to a ruling on an exception to an instruction in a jury trial.[1] *See, e.g., State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (addressing preservation of challenges to jury instructions). Just as the latter is reviewable, so too is the former.

*State v. Hull*, 286 Or 511, 517, 595 P2d 1240 (1979), is illuminating. There, the court addressed how a criminal defendant in a bench trial can obtain, and preserve for review, the trial court's determination of what elements the state must prove:

---

[1] In raising its reviewability concerns, the state candidly suggested the "jury instruction" analogy. We acknowledge, and appreciate, that candor and the professionalism that suggestion evinces.

"The problem is more difficult when the facts are in dispute and the case is tried to the court without a jury, for then the legal assumptions about the elements that would suffice to [convict the defendant] do not take the form of instructions. In such a case, there are different ways in which the record could show the basis of the court's conclusion so as not to foreclose review of this issue on appeal. One helpful way would be if the court expressed in some form its view of the facts, insofar as they are disputed. Alternatively the court might express its understanding of the elements legally needed to [convict the defendant], since these will not be recorded in the form of jury instructions. Or the court might do both. We prescribe no formal findings; what matters is only that an appellate court can perform its function on the issue whether the [case] was decided on the right legal premises." *Id.*

Here, in closing argument, defendant raised the precise matter now disputed on appeal—whether the state must prove a culpable mental state with respect to the "loadedness" element in PCC 14.32.010(C). The trial court expressly decided that question. *See* 174 Or App at 358. That ruling constituted a clear expression of the trial court's "understanding of the elements needed" for the state to convict defendant under PCC 14.32.010(C). *Hull*, 286 Or at 517. Accordingly, defendant's challenge to that ruling is reviewable on appeal.

PCC 14.32.010(C) provides:

"It is unlawful for any person on a public street or in a public place to carry a firearm upon his person, or in a vehicle under his control or in which he is an occupant, unless all ammunition has been removed from the chamber and from the cylinder, clip, or magazine."

That provision does not specify a culpable mental state. However, PCC 1.01.170 provides that the Portland City Code

"shall be construed so as to render it consistent with state criminal law, and any procedures or defenses made available in the prosecution of the same or similar offenses under state criminal law shall apply in prosecutions under this Code."

Both parties agree that PCC 1.01.170 evinces an intent on the part of the Portland City Council that courts should apply

the methodological precepts in the state criminal code when interpreting and applying criminal ordinances under the PCC. We perceive no reason to question that understanding. *See State v. Courtier*, 166 Or App 514, 519, 997 P2d 894 (2000) (court, pursuant to PCC 1.01.170, relied upon the definition of "deadly weapon" in ORS 161.015(2) to construe PCC 14.32.100, which proscribes carrying a concealed dangerous or deadly weapon). Accordingly, we refer to pertinent provisions of the state criminal code, and decisions applying those provisions, for guidance in determining which elements of PCC 14.32.010(C) require proof of a culpable mental state before criminal liability can be imposed.[2]

Three provisions of the criminal code are particularly pertinent to our analysis here. First, ORS 161.025(1)(d) provides:

"The general purposes of chapter 743, Oregon Laws 1971, are:

"* * * * *

"(d)   To define the act or omission and the accompanying mental state that constitute each offense and *limit the condemnation of conduct as criminal when it is without fault*." (Emphasis added.)

Second, ORS 161.095 provides:

"(1)   The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing.

---

[2] Given the parties' acknowledgment that PCC 1.01.170 requires reference to the methodological provisions of the Oregon Criminal Code, we need not, and do not, decide whether, in the absence of PCC 1.01.170, those provisions would otherwise *directly* apply to the Portland City Code (or any municipal ordinance). In particular, we do not decide whether PCC 14.32.010(C) is a "statute outside the Oregon Criminal Code" for purposes of ORS 161.105. *See City of Portland v. Dollarhide*, 300 Or 490, 500, 714 P2d 220 (1986) (concluding that ORS 161.035(2), which defines the scope and application of the Oregon Criminal Code, was not "intended to apply to offenses defined by cities"). *See also City of Portland v. Tuttle*, 295 Or 524, 530, 668 P2d 1197 (1983) (expressing "grave concerns whether the statutory scheme codified at ORS 161.085 through 161.175 and entitled 'Criminal Liability' applies to municipal ordinances"). *But see City of Portland v. Peterson*, 55 Or App 537, 542, 639 P2d 638 (1982) (court assumed, without deciding, that the Oregon Criminal Code applied to Portland city ordinances).

"(2)   Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state *with respect to each material element of the offense that necessarily requires a culpable mental state.*" (Emphasis added.)

Third, ORS 161.105(1) provides, in part:

"Notwithstanding ORS 161.095, a culpable mental state is not required if:

"* * * * *

"(b)   An offense defined by statute outside the Oregon Criminal Code *clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof.*" (Emphasis added.)

For nearly 30 years, we and the Supreme Court have struggled with the application of those statutes in attempting to develop a principled approach as to which elements of criminal offenses require culpable mental states and which do not. *See State v. Engen*, 164 Or App 591, 597-603, 993 P2d 161 (1999), *rev den* 330 Or 331 (2000) (recounting evolution of case law). The tautological quality of ORS 161.095(2)—each material element of the offense that "necessarily requires a culpable mental state"—has bedeviled us. *See, e.g., State v. Blanton*, 31 Or App 327, 331, 570 P2d 411 (1977) (noting that statutory language "may add some confusion to our analysis"), *aff'd* 284 Or 591, 595, 588 P2d 28 (1978) ("the qualifying phrase 'that necessarily requires a culpable mental state' * * * introduces a confusing appearance of circularity in the text"). The question of whether the legislature has "*clearly* indicate[d]" its intent to dispense with a culpable mental state has severely divided the Supreme Court. *Compare, e.g., State v. Buttrey*, 293 Or 575, 651 P2d 1075 (1982) (in prosecution for driving while suspended, state need not prove driver's actual or constructive knowledge of license suspension), *with id.* at 596 (Linde, J., dissenting) (arguing that "ORS 487.560 does not 'clearly' or otherwise show that the legislature intended to dispense with a culpable mental state"); *State v. Miller*, 309 Or 362, 788 P2d 974 (1990) (in prosecution for driving under the influence of intoxicants, state is not required to prove driver's culpable mental state

with respect to intoxication), *with id.* at 371 (Carson, J., dissenting).

The courts' *ratio decidendi* have ranged from invoking the "absurd result" maxim[3] to positing distinctions between "conduct" and "attending circumstances."[4]

■ That patchwork of appellate decisions "has not been entirely consistent." *Engen,* 164 Or App at 603. Nevertheless—and notwithstanding ostensible tensions and contradictions in other respects—the applicable statutes and decisions yield a clear principle that is decisive here: When a circumstance transforms otherwise innocent conduct into criminally culpable conduct, the existence of that circumstance is "a material element of the offense that necessarily requires a culpable mental state," ORS 161.095(2), *unless* there is a clear indication of "legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof." ORS 161.105(1)(b).

---

[3] *See, e.g., State v. Irving,* 268 Or 204, 207, 520 P2d 354 (1974) (in prosecution for fraudulent sale of imitation drugs under *former* ORS 167.232 (1971), state was not required to prove the defendant's knowledge that the putative buyer was "a peace officer or his agent" because to require proof of culpable mental state with respect to that element would be "patently unreasonable"). *Cf. Engen,* 164 Or App at 607-08 (in prosecution for possession of a controlled substance, ORS 475.992(4), applying "third level" maxim of statutory construction pertaining to prediction of how legislature would have intended the statute to be applied had it considered the issue; concluding that requiring state to prove a defendant's knowledge of the particular type of controlled substance possessed "would reward—indeed, promote—wilful 'ignorance' and purposeful 'mistake' ").

[4] *See, e.g., State v. Walker,* 140 Or App 472, 477-78, 915 P2d 1039 (1996) (in prosecution for delivering a controlled substance within 1000 feet of a school, ORS 475.999, state was not required to prove culpable mental state with respect to distance from school because "the *location* of the offense in this instance is not an act, but an attendant circumstance of the underlying criminal conduct of delivery of a controlled substance") (emphasis in original); *State v. Van Norsdall,* 127 Or App 300, 304-05, 873 P2d 345, *rev den* 320 Or 131 (1994) (in prosecution for ex-felon in possession of a firearm, ORS 166.270, state is not required to prove culpable mental state with respect to defendant's status as felon: a defendant's "status of being a felon, although an element of the crime, is not an act; it is simply part of the attending circumstances"). *But see Van Norsdall,* 127 Or App at 308-09 (Leeson, J., dissenting) (asserting that majority's "attending circumstance" analysis could not be squared with *Blanton,* in which the Supreme Court held that the age of the person to whom the defendant distributed drugs was a material element requiring proof of a culpable mental state). *Cf. Engen,* 164 Or App at 602 n 6 (noting lack of definition and potential circularity of "conduct"/"attending circumstances" rationale).

■ Here, that principle, which is amplified below, compels reversal and a new trial. The circumstance that a firearm is loaded renders otherwise innocent conduct (carrying an unconcealed firearm) criminal. Nothing in the text of PCC 14.32.010(C) or any other provision of the Portland City Code even suggests—much less "clearly indicates"—a legislative intent to dispense with proof of *scienter* for that material element. Consequently, the state was, and is, obligated to prove a culpable mental state with respect to the "loadedness" element.

The foundation of our holding is the Criminal Code's fundamental hostility toward imposing criminal liability without fault. ORS 161.025(1)(d) and ORS 161.105(1)(b) express that policy explicitly—*i.e.*, *scienter* must be proved unless the legislature (or here, the city council) has "clearly indicated" otherwise. *See* Commentary to Oregon Criminal Law Revision Commission Proposed Oregon Criminal Code Final Draft and Report (July 1970), § 11 at 11 ("The Commission follows the Model Penal Code in expressing a policy adverse to use of 'strict liability' concepts in criminal law, whenever the offense carries a possibility of sentence of imprisonment."). *See generally State v. Cho*, 297 Or 195, 200, 681 P2d 1152 (1984) ("The statutory scheme thus supports the legal maxim that to punish a person for a crime, the person must have acted with *mens rea* in breaching the terms of an offense.").

The application of that principle was the focus of both *Buttrey* and *Miller*. In *Buttrey*, a deeply divided court concluded that, in a prosecution for driving while suspended, *former* ORS 487.560, the state was not required to prove that the defendant motorist had actual or constructive knowledge that his driving privileges had been suspended. In *Miller*, a divided court concluded that a defendant can be convicted of driving under the influence of intoxicants, ORS 813.010, without proof of a culpable mental state as to the material element of being under the influence of an intoxicant. In each case, the majority and the dissenting judges agreed, without discussion, that the existence of the circumstance (*viz.*, the defendant's suspension in *Buttrey*; the defendant's intoxication in *Miller*) that transformed otherwise innocent conduct (driving) into criminal conduct was a material element of the

crime. *See, e.g., Buttrey*, 293 Or at 580-86; *Miller*, 309 Or at 365-70. In each case, all judges implicitly agreed that, absent a clear legislative indication to the contrary, the state was required to prove the defendant's *scienter* with respect to that material element. *Id.* The disagreement went solely to whether the legislature had, in fact, "clearly indicate[d]" its intention to impose criminal liability without fault. *See, e.g., Buttrey*, 293 Or at 592-97 (Linde, J., dissenting); *Miller*, 309 Or at 373-81 (Carson, J., dissenting).

This case is analogous to *Buttrey* and *Miller*—to a point. Here, as in those cases, a single circumstance—the gun's "loadedness"—renders otherwise innocent conduct criminal. Here, as in those cases, that all-important circumstance is a material element for which, in the absence of a clear legislative indication to the contrary, proof of a culpable mental state is required. *Cf. State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978) (endorsing the view that culpable mental state must be proved for those elements "defining the substance or quality of the forbidden conduct"). But here, unlike in *Buttrey* and *Miller*, there is no such clear indication of a legislative intent to dispense with proof of *scienter* with respect to that element.

We return to the text of PCC 14.32.010(C):

"It is unlawful for any person on a public street or in a public place to carry a firearm upon his person, or in a vehicle under his control or in which he is an occupant, unless all ammunition has been removed from the chamber and from the cylinder, clip, or magazine."

The text, "unless all ammunition has been removed," describes a material element of the offense. The state must prove that the firearm was, in fact, loaded.[5] The text is silent

---

[5] At first blush, it might appear that the "unless * * *" clause describes an affirmative defense. However, such a characterization cannot be squared with Oregon precedents addressing structurally similar provisions. *See State v. Vasquez-Rubio*, 323 Or 275, 279, 917 P2d 494 (1996) (canvassing decisions). *State of Oregon v. Clements*, 15 Or 237, 14 P 410 (1887), is illustrative. There, the court considered Oregon's then-existing manslaughter-by-abortion statute, which stated that a person would be guilty "* * *, unless the same shall be necessary to preserve the life of such mother[.]" The court concluded that, to obtain a conviction under the statute, the state was required to negative the "unless" language and prove that the abortion was not necessary to preserve the mother's life. *Id.* at 247-48. *See also State of Oregon v. Buck*, 200 Or 87, 103, 262 P2d 495 (1953) (adhering to holding in

as to proof of any mental state. That silence, however, does not demonstrate the requisite "clear indication." *See Cho,* 297 Or at 201 ("The mere enactment of a crime without an expressly required culpable mental state is insufficient to establish such a clear indication.").

Nothing in the context of PCC 14.32.010(C) suggests, much less clearly indicates, any intention to excuse proof of *scienter* with respect to the "loadedness" element. Finally—assuming that reference to legislative history is even permissible given the plain language of ORS 161.105(1)(b)[6]—there is no legislative history for PCC 14.32.010(C).

We thus conclude that, in a criminal prosecution under PCC 14.32.010(C), the firearm's loaded status is a material element that "necessarily requires a culpable mental state." ORS 161.105(1)(b).

In so holding, we acknowledge that our analysis, while comporting with *Buttrey* and *Miller,* differs qualitatively from that employed in *Van Norsdall.* In *Van Norsdall,* we considered whether, in a prosecution for ex-felon in possession of a firearm, ORS 166.270, the state was required to prove not only that the defendant knowingly possessed a weapon but also that he knew of his ex-felon status. Thus, in *Van Norsdall*—as in *Buttrey, Miller,* and this case—a single circumstance (the defendant's status as an ex-felon) rendered otherwise lawful conduct (*viz.,* possession of a firearm) criminal. We concluded that the state was not required to prove a culpable mental state as to that critical element. Although our opinion referred, in passing, to *Miller, see Van Norsdall,* 127 Or App at 305, we did not purport to examine legislative intent with respect to requiring proof of a culpable mental

---

*Clements*); *State v. Elliott,* 234 Or 522, 524-25, 383 P2d 382 (1963) (adhering to holding in *Buck*). Structurally, PCC 14.32.010(C) is indistinguishable from the manslaughter-by-abortion statute addressed in *Clements, Buck,* and *Elliott.*

[6] ORS 161.105(1)(b) provides that proof of a culpable mental state is not required if "[a]n *offense* * * * clearly indicates" (emphasis added) legislative intent that *scienter* proof is not required. In *Miller,* 309 Or at 368-69, and in *Buttrey,* 293 Or at 584-85, the court discussed legislative history in detail. *But see Miller,* 309 Or at 375 (Carson, J., dissenting) (ORS 161.105(1)(b) "does not permit an unbridled examination of legislative history, circumstances surrounding the legislation (then, now, or in between) or legislative acquiescence in appellate case law.").

state. *Id. Compare Van Norsdall*, 127 Or App at 308 n 1 (Leeson, J., dissenting). Instead, our analysis rested on a distinction between "conduct" and "attending circumstances," without reference to legislative intent. *Van Norsdall*, 127 Or App at 304-05. Here, as in *Engen*, we emphasize that legislative intent must be the touchstone of analysis under ORS 161.095 to ORS 161.115—and, particularly, with respect to imposition of criminal liability without a culpable mental state. Consequently, we disavow *Van Norsdall's analysis* to the extent that it deviates from that principle.[7]

We turn finally to the appropriate disposition. As noted, this was a trial to the court. Although defendant argued to the trial court that the state had failed to adduce any evidence of her *scienter* as to "loadedness," defendant does not reiterate that argument on appeal. Thus, the case is in a posture in which the trial court convicted defendant without deciding a material element for which there was proof sufficient to withstand a motion for judgment of acquittal. Given those circumstances, and as we have done previously, *see, e.g., State v. Jaha*, 118 Or App 497, 501, 848 P2d 622 (1993), we reverse and remand for a new trial.

Reversed and remanded for new trial.

---

[7] We note that the majority opinion in *Van Norsdall* did not refer to *State v. Jaha*, 118 Or App 497, 848 P2d 622 (1993), in which we held that, in a prosecution under ORS 162.385 for giving a police officer false information, the state was required to prove not only that the defendant knowingly gave the officer false information but also that the defendant knew that the officer was requesting identification for the purpose of issuing a citation. *Jaha*, 118 Or App at 501. Although the analysis in *Jaha* was brief, its result accords with our result here.