# STATE OF OREGON,
*Respondent on review,*

*v.*

# STEPHEN DeMELLO,
*Petitioner on review.*

## (DC M337553; CA A32628; SC S32077)

716 P2d 732

Craig P. Colby, of Wall & Colby, Portland, argued the cause and filed the petition for petitioner on review.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

Lent, J., dissenting opinion.

Linde, J., dissenting opinion.

**JONES, J.**

This case presents two questions:

(1) Does notification that certified mail is at the post office constitute notice of driver's license suspension under ORS 482.570 when the letter is returned to the Motor Vehicles Division of the Department of Transportation (division) marked "unclaimed"?

We hold that the defendant was properly notified under the statute.

(2) May a defendant establish the affirmative defense of lack of notice by not claiming certified mail after being advised that the mail awaits pickup at the post office?

We hold that a defendant may not.

In this case, defendant appeals his conviction under ORS 487.560 for driving while suspended. The state proved at trial that defendant drove a car on a highway while his license was suspended. The state introduced at trial an envelope in which the division had mailed a copy of the suspension order by certified mail restricted delivery, return receipt requested, to defendant at his address as shown by division records. The envelope showed that the postal service returned the letter to the sender as "unclaimed." Defendant does not dispute these facts. However, defendant argues that he should be acquitted because the division did not notify him of his suspension as required by ORS 482.570[1] and, even if the division did send the notice, the state's case proves his affirmative defense that he had not received notice of suspension.

At the time of the offense, ORS 482.570 (now ORS 809.430) provided:

"* * * When the division, as authorized or required, suspends, revokes or cancels a license or the right to apply for a license to operate motor vehicles, it shall give notice of such action to the person whose license or right is affected. The notice shall state the nature and reason for the action and, in the case of a suspension, whether it was ordered by a court. *Service of the notice is accomplished either by mailing the*

---

[1] In 1983, ORS 482.570 was recodified at ORS 809.430. *See* Or Laws 1983, ch 338, § 978; Or Laws 1983, ch 338, § 355.

*notice by certified mail restricted delivery, return receipt requested, to the person's address as shown by division records, or, by personal service in the same manner as a summons is served in an action at law."* (Emphasis added.)

Before trial, defendant notified the state that he intended to rely on an affirmative defense under ORS 487.560 (1983), which provided in pertinent part:

"(1)   A person commits the crime of driving while suspended or revoked if the person drives a motor vehicle upon a highway during a period when the person's license or permit to drive a motor vehicle or the person's right to apply for a license to drive a motor vehicle in this state has been suspended or revoked by a court or by the division * * *.

"(2)   In a prosecution under subsection (1) of this section, it is an affirmative defense that:

* * * * *

(b)   The defendant had not received notice of the defendant's suspension or revocation as required by ORS 482.570 * * *."[2]

---

[2] The legislature has since amended ORS 487.560 and recodified it at ORS 811.175 and 811.180. *See* Or Laws 1983, ch 338, § 978; Or Laws 1983, ch 338, §§ 598, 599. ORS 811.175 now sets out the elements of driving while suspended and ORS 811.180 sets out the affirmative defenses. The relevant portions of the statutes provide:

ORS 811.175(1):

"(1) A person commits the offense of driving while suspended or revoked or in violation of an occupational or probationary permit if the person does any of the following:

(a) Drives a motor vehicle upon a highway during a period when the person's driving privileges or right to apply for driving privileges have been suspended or revoked in this state by a court or by the division."

ORS 811.180(1):

"The following establishes affirmative defenses in prosecutions for driving while suspended or revoked or in violation of an occupational permit under ORS 811.175 and describes when the affirmative defenses are not available:

(1) In addition to other defenses provided by law, including but not limited to ORS 161.200, it is an affirmative defense to ORS 811.175 that:
* * * * *

(b) The defendant had not received notice of the defendant's suspension or revocation or been informed of the suspension or revocation by a trial judge who ordered a suspension or revocation of the defendant's driving privileges or right to apply."

At trial, the state produced the only evidence, including copies of a suspension notice that the division had mailed to defendant and of the envelope with the "unclaimed" stamp on it. Defense counsel argued at trial and on appeal that the "unclaimed" mark on the envelope is "sufficient evidence by a preponderance of the evidence to meet the standard of [ORS 487.560(2)(b)]." The trial judge and the Court of Appeals rejected this argument.

## NOTICE UNDER ORS 482.570

The record shows that the postal service leaves a pink slip in accordance with Section 912.55 of its Domestic Mail Manual to notify persons that certified mail is being held for them at the post office. During argument defense counsel stated his position on whether defendant received pink slip notification:

"DEFENSE COUNSEL: My position now is that * * * receipt of the pink slip is very, very different from receipt of the notice of suspension.

"THE COURT: You're willing to allow them the presumption about receipt of the pink slips because you don't think that's an element but notice of suspension is an element, is that what you're saying?

"DEFENSE COUNSEL: Right, right. I can't deny them the presumption of the pink slip."

By using the word "presumption," the court and counsel were not referring to an evidentiary presumption under Chapter III of the Oregon Evidence Code. Under OEC 309, as interpreted by this court in *State v. Rainey,* 298 Or 459, 693 P2d 635 (1985), there are no presumptions in criminal proceedings that can be used against an accused relating to an element of the crime. The colloquy referred to whether defendant contended that he never received the pink slip. Defendant apparently does not contest that he received a pink slip notifying him of certified mail.

The issue boils down to whether the state proves notice by showing that defendant received a pink slip notification that certified mail is waiting for him at the post office, and whether defendant's affirmative defense fails if the evidence reveals that he received the pink slip even though no

other evidence shows that he ever physically received the letter of suspension from the division.

This court made it clear in *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982), that a criminal intent to drive with a suspended license was unnecessary. In *Buttrey,* the defendant stipulated that she was driving on a highway. A copy of the order suspending her driver's license was received in evidence. Attached to the suspension order was a certificate that the copy of the order was correct and was mailed to the official address as reported to the division. 293 Or at 578. No return receipt was offered in evidence and no evidence, other than the suspension order itself and the attached certificate, showed that the defendant had received the notice of suspension. 293 Or at 579. This court affirmed her conviction despite her argument that the state had not proven *mens rea* and that the shifting of the burden under ORS 487.560(2) was unconstitutional. *Id.*

Justice Peterson, writing for the majority, stated that a culpable mental state is not an element of driving while suspended under ORS 487.560:

"The legislative intent is clear: The state makes a prima facie case upon proof of the two elements in ORS 487.560(1), without proof of a culpable mental state, i.e., without proof of any knowledge by the defendant of the license suspension. The defendant can avoid liability by establishing the affirmative defense by a preponderance of the evidence. ORS 161.055(2). The state, in turn, can avoid the effect of the notice defense afforded by ORS 487.560(2)(b) by establishing beyond any reasonable doubt that the defendant 'refused to sign a receipt for the certified mail containing the notice,' ORS 487.560(3)(a), or that '[t]he notice could not be delivered * * * because he had not notified the division of his address or a change in his residence as required by subsection (3) of ORS 482.290,' ORS 487.560(3)(b), or that the defendant had been informed by a trial judge that the judge was ordering a suspension of the license, ORS 487.560(3)(c), or that the defendant had actual knowledge of the suspension, ORS 487.560(3)(d).

"Subsections (1), (2) and (3) of ORS 487.560, considered together and with ORS 161.055(2) (which defines an affirmative defense), set forth a procedure for the blameless defendant to establish a defense. The statutes clearly indicate that the legislature intended that the state, in its case in chief, need

not prove any culpable mental state, but that the defendant might avoid conviction for conduct which is otherwise criminal by establishing one of the defenses enumerated in ORS 487.560(2)(b). As discussed below, if the state is required to prove a culpable mental state as an element of the crime, then subsections (2)(b) and (3)(d) of the statute are surplusage.

"The legislative history confirms this analysis. It reveals that the legislature was concerned with a massive social problem. Suspended drivers constituted a dangerous class of drivers, causing carnage on the highways and clogging courts. Prosecutions were difficult. The legislature believed that this class of drivers caused unnecessary human suffering and constituted, as a class, a disproportionate danger. The legislature was so concerned with the risk to person and property that it wanted to make certain conduct punishable as a crime, without fault." 293 Or at 583-84 (footnotes omitted).

The plain reading of ORS 482.570 is that the state accomplishes the giving of notice *either* by mailing the notice by certified mail *or* by personal service. The legislature could have made the statute more specific by specifying that all the suspended operator need receive was the pink slip notifying him of the presence and availability of certified mail. As the legislative history of this statute demonstrates, the legislature did not intend that the defendant need actually receive the suspension letter, open it and read it before notice was deemed satisfied. Individuals who have their driving privileges revoked or suspended are entitled only to the notice articulated in the statute. Defendant received the notice that the statute provides. The division sent defendant a letter of notice of his driving suspension by certified mail restricted delivery, return receipt requested. Defendant does not contend that notice was not mailed to his address as shown by division records or that the address was not his address. Therefore, even with this minimal evidence, the division complied with the statute and accomplished notice by sending the letter certified mail restricted delivery, return receipt requested. ORS 487.560(1)(a) requires a defendant to prove by a preponderance of the evidence, ORS 161.055(2), that he did not receive the notice required to be given by ORS 482.570.

## AFFIRMATIVE DEFENSE UNDER ORS 487.560(3)

The affirmative defense of ORS 487.560(3)(c) is a limited defense of lack of notice that mitigates potential

unfairness to a driver who has not received notice of suspension as required by ORS 482.570. Defendant argues that he proved this affirmative defense by pointing to undisputed evidence that the suspension letter was returned "unclaimed."[3] The statute's legislative history demonstrates that the legislative intent supports the state's position and not the contentions of defendant concerning what notice was intended and what defense was available.

## LEGISLATIVE HISTORY OF ORS 482.570 and 487.560

When first enacted in 1965, the statutes provided that notice of suspension or revocation of a license could be given either by personal delivery or by mail. Notice by mail was afforded a disputable presumption of receipt. Or Laws 1965, ch 321, § 2. In 1971, the legislature changed the statute to provide that notice was accomplished either by mailing the notice by certified mail or, at the option of the division, by personal service. Or Laws 1971, ch 428, § 1.

Representative Tony Meeker, the sponsor of House Bill 1655, testified before the House Committee on Transportation. The minutes summarize his testimony as follows:

"* * * many times the individuals who are arrested for violating the law of driving with a suspended license will indicate in their arguments that they did not know their license was suspended. The present law reads that notice by mail is authorized to the individual. He quoted the law and added this has not been able to stand up in court and HB 1655 is to correct that law, either by mailing the notice by certified mail with return receipt requested or at the option of the Motor Vehicles Division to offer by personal service in same manner as in action at law. He said that in discussing this with several attorneys, they had indicated to strengthen the bill, an amendment might be added if the Committee felt it desirable *'that refusal of the letter is also significant proof of receipt' because it would be very possible that an individual might refuse a certified letter by looking at the envelope and knowing the contents.* He concluded his testimony by saying

---

[3] As the Court of Appeals correctly points out, merely giving notice of the defendant's intent to rely on the affirmative defense of lack of notice does not prove anything or place any greater burden on the prosecution. "Evidence depriving a defendant of the affirmative defense may be offered in the prosecution case in chief when a defendant has raised a defense of lack of notice, but it need not be." *State v. DeMello,* 74 Or App 503, 507-08, 703 P2d 276 (1985), citing ORS 487.560(4).

that this will cost money, and therefore becomes a value judgment of the committee." Minutes, House Committee on Transportation (March 18, 1971) (emphasis added).

The bill passed with the suggested amendment. The legislature obviously intended to address the problem raised when people contend they had no "notice."

In 1973, the statute was amended to read that when certified mail notice is returned unsigned, service of notice shall be accomplished by personal service. Or Laws 1973, ch 643, § 1. Mr. Gil Bellamy, from the Traffic Safety Commission, spoke on behalf of Governor Tom McCall before the Senate Committee on Transportation. He stated that 34 percent of suspension notices were being returned to the Motor Vehicles Division unsigned. Under Senate Bill 637, when a letter is returned, notice will be served in the same manner as a summons in an action at law. Minutes, Senate Committee on Transportation (March 15, 1973).

In 1975, the legislature deleted this provision for mandatory notice and made non-receipt of notice an affirmative defense under ORS 487.560. The 1973-75 Interim Committee on Judiciary, which drafted the revision of the Oregon Vehicle Code, stated in part:

"Paragraph (b) places the burden on the defendant to prove by a preponderance of the evidence that he did not receive the required notice of suspension or revocation. * * * The most vexatious problem that has plagued officials in their attempts to enforce the prohibition against driving while suspended has been their inability to locate the licensee to notify him of the suspension or to prove at trial that notice was received.

"Subsection (3) deals with this dilemma by making the defense unavailable if the certified mail containing the notice has been refused or if the defendant has not kept the division advised of his residence as required by statute. This approach to the notice problem is consistent with *State v. Buen,* [13 Or App 426, 509 P2d 865 (1973)]. ORS 482.570 is amended to delete the provision for mandatory personal service *when the certified mail is returned, receipt unsigned.* Paragraph (c) takes away the defense if the defendant was previously put on notice by a judge that a suspension of the license was to be ordered by the judge." Proposed Revision, Oregon Vehicle

Code, Committee on Judiciary, Commentary § 92 at 72 (January 1975) (emphasis added).

This commentary addresses the "returned unsigned" problem. We discern no significant legal difference between "refusing" a letter from the division and "failing" to claim a certified letter after being notified that the certified letter awaits pickup. The suspended driver cannot defeat the purpose of the statute by either ploy. No law demands that a person accept or pick up certified mail, but the privilege to drive may be lost if the mail is not claimed.

During legislative deliberations on the proposed section that was before the 1975 legislature as part of Senate Bill 1, the project director for the vehicle code revision described the policy behind the section to the Senate Judiciary Committee:

"Section 92 deals with driving while suspended or revoked. This is an offense that the Interim Committee took a hard line on. It will be seen that this would replace the existing statute dealing with driving while suspended or revoked.

"There are two very important policy questions incorporated in this section. One—it has set forth an affirmative defense to the charge. This means that the defendant would have the burden of establishing by a preponderance of the evidence that [he] had not received notice of his suspension as required by statute. In the past, enforcement of this law has been very difficult primarily because of the difficulty, and at times the sheer impossibility of establishing [it] to the satisfaction of the courts. * * *

"What is being put forth in this section is that the burden is going to be shifted so long as there has been a showing that there is a suspension and that the defendant in question was driving at a time he was suspended or revoked."

Chief Judge Herbert Schwab of the Court of Appeals also testified about the need for changes in the law to the Senate Committee on Judiciary. He stated that "there are few prosecutions. The system of notification has worked in reverse since personal service is required. The fact is that lots of people are hard to find. They are finally picked up and they say 'no notice.' " (Statements of Schwab, C.J., Tape 2a, side 2, Sen. Comm. on Judiciary, Jan. 28, 1975.) Chief Judge Schwab continued:

"Under present law, a notice of suspension must be personally served by a police officer. Many people are able to avoid receiving the notice and the state has no case. Under Senate Bill 1, the judge's order of suspension in court would speak for itself. If it is an administrative suspension, *the motor vehicle department would send the notice to the last address that the driver had given. [And that's where their duty stopped.]* Drivers are required to keep the motor vehicle department informed of change of address. This would shift the burden of notification from the state to the defendant. We would see far more citations for driving while suspended, which is a serious offense, and far fewer for no operator's license, which is a minor offense. * * *" Minutes, Senate Committee on Judiciary 6 (January 28, 1975) (bracketed language from tape of hearing, *supra;* emphasis added).

Based on the foregoing legislative history, we believe that the legislature intended that notice of suspension is complete if it is established that the letter was sent by certified mail restricted delivery, return receipt requested, to the person's address as shown on division records. The legislature did provide an affirmative defense and placed the burden on the defendant to prove that he did not receive notice of the certified mail. But this does not mean that the defendant must receive the actual letter of suspension. The legislature did not intend to create a loophole for suspended drivers by allowing them to avoid receipt of notice simply by refusing or failing to claim certified mail.

We conclude that defendant cannot defeat the charge of driving while suspended simply by not claiming certified mail. The statute requires sending the notice, not that a person actually receive the letter. The proper notice was sent. Defendant received the notice of the certified mail. He failed to claim it. His defense fails.

The Court of Appeals is affirmed.

**LENT, J.** dissenting.

The issue is whether the state's own evidence establishes the affirmative defense that the defendant "had not received notice of the defendant's suspension * * * as required by ORS 482.570 * * *." The majority holds that it does not. I believe that it does and therefore dissent. Before going to my

own analysis, I desire to raise some questions concerning the majority's use of the legislative history.

A fair reading of Representative Meeker's testimony shows that the proponents of the 1971 legislation were concerned with the person who "might refuse a certified letter by looking at the envelope and knowing the contents." In the case at bar, the state's evidence shows that the envelope was never shown to the defendant.

The majority quotes from the Interim Committee on Judiciary concerning 1975 amendments. That legislative history discloses only that those favoring the amendment intended to forestall the defense where the person refused the mail, did not sign the receipt or had not kept the division advised of his current address. None of those three situations obtains here. There is nothing in that history to show that the proponents of amendment gave any consideration to the case where unidentified mail is simply unclaimed.

The majority purports to discern no difference between refusing a letter from the division and failing to claim a certified letter. The difference is obvious. The first situation, refusal, is what the statutory text was meant to reach. When the postal carrier hands an envelope from the division to the addressee and requests that the addressee sign the receipt for certified mail, the addressee can see that the letter is from the division, and he may believe that he can avoid, by refusal, service of a notice he may well expect from that agency. That is not what happened in this case.

The second situation, failure to claim mail, does not present that opportunity to the addressee. The pink slip does not identify the source of the mail which is waiting at the post office. The recipient of the pink slip does not know from whom the mail comes.

There is not one word in the legislative history quoted by the majority to indicate that the legislators gave any consideration to the situation where the addressee does not know the source of the mail.[1] On the contrary, that history

---

[1]The material quoted by the majority from testimony of the project director and from the testimony of Chief Judge Schwab does not speak at all to the issue involved in this case.

shows that they were trying to forestall any advantage to the addressee who refuses the mail or will not sign for it.

ORS 487.560 afforded an affirmative defense to the defendant who "had not received notice * * * as required by ORS 482.570." What is it that ORS 482.570 required? The statute imposed on the division the duty to "give" notice to the person whose license is suspended. The statute commanded what the notice had to contain. For some reason not readily apparent to me, the statute, instead of telling how the division had to "give" notice, went on to describe "[s]ervice" of notice. I shall assume that the legislature meant that as the giving of notice. That being so, I agree with the majority that the state satisfies what is commanded of it by ORS 482.570 by mailing "by certified mail restricted delivery, return receipt requested." That is not, however, the same as showing the receipt of notice.

The burden is on the defendant, if he wishes to excuse his criminal conduct, to show that he did not receive the notice. For this defendant, the state proved that fact. The majority apparently reads ORS 487.560(2)(b) where it said "as required by ORS 482.570" to mean the *manner* of serving notice that was described in ORS 482.570. That is not the meaning of "as required." As I have stated above, the text of that statute was addressed to imposing a duty on the division to give notice, i.e., requiring an affirmative act of the division.

ORS 487.560(2)(b) is meaningless unless the defendant can somehow meet the test of showing that he did not receive the notice. I assume that in the ordinary course the division will mail the notice "certified mail restricted delivery, return receipt requested." This may satisfy the state's initial burden, but if the defendant can show that he never received the notice that the division was required by ORS 482.570 to send, defendant will successfully avoid the criminal charge. For instance, a person's mail may have been stolen or destroyed on the day that the pink slip is left at the box. It is not impossible that the postal carrier might neglect to leave a pink slip.

In this case, the defendant received a pink slip. This did not tell him that he had mail waiting that had originated with the division. He did not refuse mail from the division. He did not refuse to sign for certified mail from the division. The

mail was eventually returned by the postal department to the sender as being "unclaimed," and the evidence shows that the "unclaimed" notification is used for an entirely different purpose than when the mail is "refused."

The legislature never said that when someone received a pink slip, that he received the unidentified mail that was available at the post office to the addressee should he remember to make that trip and care to make the trip to the post office.

The state's evidence shows that this defendant did not receive the notice required by ORS 482.570 to be given to him. I would reverse the Court of Appeals and the trial court.

**LINDE, J.,** dissenting

In *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982), this court, by a 4-3 majority, held that the crime of driving when one's license has been suspended is a strict liability offense of which a driver can be guilty without any knowledge or notice of the suspension. Given that holding (and its predecessor, *State v. Stroup,* 290 Or 185, 620 P2d 1359 (1980)), neither knowledge nor notice is an element of a driver's guilt at the time when he commits the crime. If the driver is guilty regardless of knowledge or notice, the question arises why the legislature provided an escape by means of an "affirmative defense" when a defendant has not received notice of the license suspension, ORS 487.560(2).

The reason bears on the differences between the majority's and Lent, J.'s, interpretation of that section. ORS 487.560(2) allowed the defense if "[t]he defendant had not received notice of the defendant's suspension or revocation as required by ORS 482.570," a section in another chapter of the code that specified how the Motor Vehicles Division was to give notice of a driver's license suspension. Here there is no disagreement that the department proceeded in the manner required by ORS 482.570. The disagreement is whether the defendant "received notice * * * as required" by that section.

In *State v. Buttrey, supra,* the state argued that the purpose of the affirmative defense was not to exculpate drivers who had no notice or knowledge of their license suspensions, as this was not an element of the offense; the purpose was only to give the Motor Vehicles Division an incentive to comply

with the notice requirements by acquitting guilty drivers who had not been given proper notice. Such a reading of the legislative purpose is not impossible, but it is unlikely, and the *Buttrey* majority did not accept it. Instead, the majority opinion treated the affirmative defense as a "procedure for the blameless defendant," 293 Or at 583, in order to "ameliorate the potential unfairness to a driver who had not received notice of the suspension," 293 Or at 585, that is to say, as the state's gracious forgiveness of the uninformed driver's guilt.

The dissenters in *Buttrey* thought it clear that the legislature's only purpose was to facilitate convictions by unconstitutionally shifting to the defendant the burden of proof on the element of culpable knowledge of the license suspension, and that the legislature would not have enacted a law making a felon of one who drove in good faith and reasonable reliance on a license issued by the state. I shall not repeat what I wrote in *Buttrey, see* 293 Or at 590, 594-97. Suffice it to say that once the state's "deterrence" rationale for the affirmative defense is rejected in favor of a rationale of ameliorating "potential unfairness" toward a "blameless defendant," as the *Buttrey* majority put it, that legislative objective is consistent only with Justice Lent's reading of the words "receive notice" to mean more than a pink slip from the postal service that an unidentified piece of mail may be picked up at the post office. I therefore join in his dissent.