Jennifer YOUNG,
*Appellant,*

*v.*

MULTNOMAH COUNTY SHERIFF
DAN NOELLE,
*Respondent.*

0010-10901; A113123

57 P3d 216

James E. Leuenberger argued the cause and filed the briefs for appellant.

Susan M. Dunaway, Assistant County Attorney, argued the cause for respondent. With her on the brief was Thomas Sponsler, County Attorney for Multnomah County, Oregon.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The Sheriff of Multnomah County revoked petitioner's concealed handgun license (CHL). She petitioned for review in the circuit court, but the court dismissed her petition because it was not timely filed within the 30-day limit established by ORS 166.293(5). Petitioner appeals. The dispositive issue is whether the 30-day period began to run when the sheriff sent petitioner notice of the revocation, as the sheriff contends and the trial court concluded, or when she actually received it, as petitioner contends. We agree with petitioner and reverse.

The following facts come from the parties' briefs and the trial court's undisputed findings. In 1997, the sheriff granted petitioner's application for a CHL. However, as a result of two incidents in which she allegedly threatened women in her neighborhood whom she believed to be prostitutes, the sheriff sent her notice on January 27, 1999, that he was revoking her CHL because she was "a danger to others." ORS 166.293(2). As required by statute, the sheriff sent that notice by certified mail, restricted delivery. ORS 166.293(3)(b). Petitioner was aware that the post office was attempting to deliver a certified letter to her, and she was aware that it came from the sheriff, but she never signed for it, picked it up, or knew its contents. After three unsuccessful attempts at delivery, the post office returned the letter to the sheriff marked "unclaimed." Petitioner remained in physical possession of her CHL.

Around a year and a half later, on June 6, 2000, petitioner was once again detained for allegedly threatening women she believed to be prostitutes. A police officer seized her CHL and turned it over to the sheriff, as authorized by ORS 166.293(4). On August 4, 2000, after the state decided not to prosecute her, petitioner wrote the sheriff demanding the return of her CHL. The sheriff refused, explaining that he was not returning it because it had been revoked since January 27, 1999. In a follow-up letter on September 25, 2000, the sheriff enclosed a copy of the January 1999 CHL revocation letter. That was the first time petitioner saw or took actual possession of any notice of revocation. Twenty-nine days later, she petitioned the circuit court for review of

the revocation, but the court dismissed the petition on the ground that the 30-day limit had begun when the sheriff sent the original revocation notice in January 1999. Petitioner appeals.

Two statutes determine the outcome of this case. ORS 166.293(3)(b) provides:

"A sheriff may revoke a [concealed handgun] license by serving upon the licensee a notice of revocation. The notice must contain the grounds for the revocation and must be served either personally or by certified mail, restricted delivery. The notice and return of service shall be included in the file of the licensee. The revocation is effective upon the licensee's receipt of the notice."

ORS 166.293(5) provides:

"A person denied a concealed handgun license or whose license is revoked or not renewed * * * may petition the circuit court * * * to review the denial, nonrenewal or revocation. The petition must be filed within 30 days after the receipt of the notice of denial or revocation."

Petitioner makes a simple and straightforward argument. Under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), if the meaning of a statute is clear from the text and context, no further inquiry as to its meaning is necessary. Here, petitioner contends, the text of the statute plainly states that the 30-day period begins with "the receipt of the notice"; the notice it refers to is the notice of revocation and not the notice that a certified letter of unknown contents from the issuing authority is available at the post office. The statute does not say "constructive" receipt, petitioner argues, and we are powerless to insert that qualification. ORS 174.010. Further, petitioner maintains, the context includes ORS 166.293(3)(b), which requires forms of service that, by definition, entail actual notice to the licensee. No further inquiry is necessary. Petitioner did not "receive" the notice of revocation until September 25, 2000, so her petition for review to the circuit court was timely.

The sheriff bases his response entirely on one case, *State v. DeMello*, 300 Or 590, 716 P2d 732 (1986), which, he asserts, holds on facts nearly identical to those in this case that, under a statute nearly identical to the one in this case,

notice of revocation of a driver's license is effective when sent by certified mail, and the licensee cannot avoid its consequences by refusing to accept or sign for it. We conclude that *DeMello* does not support the sheriff's position.

The defendant in *DeMello* was tried for driving with a suspended license. As an affirmative defense, he maintained that he had never received notice of the suspension. *Id.* at 592. He did, however, acknowledge that he had received "a pink slip notifying him of certified mail." *Id.* at 594. The Supreme Court rejected his "nonreceipt defense," concluding that the defendant could not

> "defeat the charge * * * simply by not claiming certified mail. The statute requires sending the notice, not that a person actually receive the letter. The proper notice was sent. Defendant received the notice of the certified mail. He failed to claim it. His defense fails."

*Id.* at 600. The sheriff contends that that conclusion disposes of petitioner's arguments in the present case as well. We disagree.

The statutory scheme in effect at the time of *DeMello* required the Motor Vehicles Division to "give notice" to the driver as follows:

> "Service of the notice is accomplished either by mailing the notice by certified mail restricted delivery, return receipt requested, to the person's address as shown by division records, or, by personal service * * *."

ORS 482.570 (1981).[1] Another statute provided that, in a prosecution for driving while suspended, "it is an affirmative defense that * * * [t]he defendant had not received notice of the defendant's suspension or revocation as required by ORS 487.570 * * *." ORS 487.560(2)(b). However, yet another statute provided that the defense was not "available" if defendant "refused to sign a receipt for the certified mail containing the notice." ORS 487.560(3)(a). Based on those statutes and on

---

[1] In 1983, the vehicle code was renumbered. Or Laws 1983, ch 338. Further, the statutes at issue in *DeMello* have since been amended or repealed. None of those changes affects the present case, so references here are to the pre-1983 statutes.

their legislative history, which demonstrated that "the legislature was concerned with a massive social problem" consisting of "[s]uspended drivers * * * causing carnage on the highways[,]" *DeMello*, 300 Or at 596 (quoting *State v. Buttrey*, 293 Or 575, 584, 651 P2d 1075 (1982)), the court concluded that driving while suspended was a "strict liability" offense and that "[t]he legislature did not intend to create a loophole for suspended drivers by allowing them to avoid receipt of notice simply by refusing or failing to claim certified mail." *Id.* at 600. The court wrote:

> "As the legislative history of this statute demonstrates, the legislature did not intend that the defendant need actually receive the suspension letter, open it and read it before notice was deemed satisfied. * * * Defendant received the notice that the statute provides."

*Id.* at 596.

The sheriff would have us apply that last sentence to the present case. We decline that invitation. The sentence, in context, means only that the statutory scheme governing revocation of drivers' licenses—a scheme that included an affirmative defense of nonreceipt and a "refusal to accept" exception to that defense—demonstrated that the legislature intended that a defendant's actual receipt of the notice was not a necessary prerequisite to a valid revocation. The statutes governing revocation of a CHL, in contrast, contain neither a nonreceipt affirmative defense nor a "refusal to accept" exception, and they do not state, as the driver's license revocation statutes stated, that "[s]ervice of the notice is accomplished by * * * mailing the notice by certified mail restricted delivery, return receipt requested * * *." ORS 482.570. Rather, the CHL statute states only that "revocation is effective upon the licensee's receipt of the notice[,]" and that the notice "must contain the grounds for the revocation * * *," *i.e.*, the notice is *not* the "pink slip." ORS 166.293(3)(b).

Without *DeMello*, the sheriff has no support for the contention that ORS 166.293(3)(b) and ORS 166.293(5) do not mean what they plainly say: "revocation is effective upon the licensee's receipt of the notice," and a licensee has 30 days from that receipt to petition for review of the revocation. "To

receive" means, primarily and as relevant here, "to take possession or delivery of * * * ‹ a letter› * * * to knowingly accept * * *." *Webster's Third New Int'l Dictionary* 1894 (unabridged ed 1993). The word "notice" in those statutes could not refer to anything other than the "notice of revocation" specified in ORS 166.293(3)(b). That notice consists of the fact of revocation and also of "the grounds for the revocation." *Id.* Thus, the event that triggers the 30-day appeal period is taking delivery of, or knowingly accepting, a communication from the sheriff that states the existence of and grounds for the revocation. In January 1999, petitioner received, at most, notice that a certified letter of unknown contents had been sent from the sheriff. Petitioner did not receive notice of revocation until September 25, 2000. Her petition for review, filed within 30 days thereafter, was timely.

Reversed and remanded.