Argued and submitted April 10, the decision of the Court of Appeals and the judgment of the district court reversed and remanded to the district court for a new trial, October 25, 1990

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# KENNETH DALE OLMSTEAD,
*Petitioner on Review.*

## (DC 88-11312; CA A50685; SC S36654)

800 P2d 277

Michael McGrady, Eugene, argued the cause and filed the petition for petitioner on review.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review.

Before Peterson, Chief Justice, Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices, and Graber, Justice pro tempore.

GRABER, J.

Gillette, J., dissented by opinion, in which Van Hoomissen, J., joined.

## GRABER, J.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010,[1] and driving while suspended (DWS), ORS 811.182.[2] Pursuant to ORS 161.309, he gave notice of his intent to raise the affirmative defense of guilty except for insanity under ORS 161.295. The state filed a motion in opposition, requesting "that the court strike defendant's Notice of Intent to Rely Upon The Mental Disease or Defect Defense Under ORS 161.295." The trial court granted the motion. It reasoned:

"[*State v.*] *Maguire*[, 78 Or App 459, 717 P2d 226 (1986), *aff'd without opinion by an equally divided court* 303 Or 368, 736 P2d 193 (1987),] very specifically holds that the defense created by ORS 161.295 is not available in a DUII prosecution. The majority's reasoning therein would make it clear that the defense is likewise not available to a defendant charged with DWS, since DWS is likewise a strict liability offense. [*State v.*] *Buttrey*[, 293 Or 575, 651 P2d 1075 (1982)]."

After a trial on stipulated facts, the court found defendant guilty of both DUII and DWS. Defendant appealed from the resulting judgment, arguing that the court erred in striking his "Notice of Intent to Defend Under ORS 161.295." The Court of Appeals affirmed the judgment on the ground that "[t]he defense under ORS 161.295 is not available, because driving under the influence of intoxicants and driving with a suspended license are both strict liability offenses. *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982); *State v.*

---

[1] ORS 813.010 provides in part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

[2] ORS 811.182 provides in part:

"(1) A person commits the offense of criminal driving while suspended or revoked or in violation of a hardship or probationary permit if the person violates ORS 811.175 and the suspension or revocation is one described in this section, or if the hardship or probationary permit violated is based upon a suspension or revocation described in subsection (3) or (4) of this section."

*Maguire,* 78 Or App 459, 717 P2d 226 (1986), *affirmed without opinion by an equally divided court* 303 Or 368 (1987)." *State v. Olmstead,* 99 Or App 41, 42, 780 P2d 1201 (1989). We reverse the decision of the Court of Appeals.

We allowed review to decide whether the defense of guilty except for insanity is available to persons charged with DUII and DWS. At oral argument, however, we asked whether, at the hearing on the state's motion to strike, defendant had made an offer of proof concerning the nature of his alleged mental disease or defect. He had not. After argument, we asked the parties to respond to these questions:

"Is this case in a proper procedural posture to permit the court to resolve the issue argued by the parties? More specifically, was defendant required to make an offer of proof to preserve the error he now claims?"

Defendant maintains that this case is in a proper procedural posture for appellate review, while the state argues otherwise.

Defendant argues that, because he followed the procedure for giving notice under ORS 161.309, he has satisfied all requirements for the presentation of evidence at trial *and* for the preservation of error on appeal. That is, he asserts, the filing of the notice requires this court to presume that there is an adequate factual basis for the defense, which he could have proved but for the trial court's refusal to permit the defense. The state counters that the statutory notice is a necessary, but not a sufficient, condition for the preservation of error.

ORS 161.309 provides in part:

"(1)   No evidence may be introduced by the defendant on the issue of insanity under ORS 161.295, unless the defendant gives notice of intent to do so in the manner provided in subsection (3) of this section.

"* * * * *

"(3)   A defendant who is required under subsection (1) * * * of this section to give notice shall file a written notice of purpose at the time the defendant pleads not guilty. The defendant may file such notice at any time after the plea but before trial when just cause for failure to file the notice at the time of making the plea is made to appear to the satisfaction of the court. If the defendant fails to file notice, the defendant shall not be entitled to introduce evidence for the establishment of a defense under ORS 161.295 * * * unless the court, in

its discretion, permits such evidence to be introduced where just cause for failure to file the notice is made to appear."

ORS 161.309 delineates preconditions to a defendant's introduction at trial of evidence under ORS 161.295. A defendant may not introduce evidence concerning insanity under ORS 161.295, unless the defendant has given the required notice or the trial court has found just cause for the failure to give it. The legislative history of ORS 161.309 shows that its purpose "is to avoid surprising the prosecution with a highly technical and complicated issue where experts are going to be used by the defense." Commentary to Proposed Oregon Criminal Code 39, § 40 (1970).[3]

■       Nothing in the words or the history of ORS 161.309 suggests that the statute is meant to govern preservation of error for appellate review. Neither does that statute or its history suggest that the mere giving of notice requires appellate courts to presume that the defendant can establish a valid defense. Because ORS 161.309 does not address the issue, we turn to the usual principles that govern the preservation of error.

■       Whether an offer of proof was required depends on how we view the nature of the state's motion and the trial court's ruling. The motion can be seen as the functional equivalent of a pretrial motion *in limine*. The state asked the trial court to preclude defendant from introducing evidence on the issue of insanity under ORS 161.295, because it was irrelevant to the crimes charged. Under that view, the court's ruling, in essence, upheld a general objection to the relevance of the proposed evidence. In order to preserve error relating to the exclusion of evidence, a party ordinarily must make an offer of

---

[3] Other portions of the legislative history of ORS 161.309 also contain evidence of that legislative purpose. Professor George M. Platt of the University of Oregon School of Law stated that the "theory [behind the notice requirement] is that the state ought not to be surprised at the trial with what amounts to a very technical and difficult situation with respect to evidence." Minutes, Senate Committee on Criminal Law & Procedure, February 10, 1971. Minutes of the meeting of October 31, 1968, of the Oregon Criminal Law Revision Commission, Subcommittee Number 3, show that Professor Platt explained that the notice provision "protected the state against last minute surprises." According to the minutes of that same meeting, subcommittee member Frank D. Knight, then Benton County District Attorney, commented "that the purpose of the statute was to require the defendant to give notice at the time he entered his plea so that when the case was set for trial, all parties could be reasonably certain that the case would go to trial on that date."

proof as to the content of the excluded evidence. OEC 103(1)(b);[4] *State v. Affeld,* 307 Or 125, 128, 764 P2d 220 (1988).

■      We believe, however, that a more apt analogy is to a motion to strike an affirmative defense for legal insufficiency in a civil case. We agree with Wright and Graham, Federal Practice and Procedure: Evidence 165-66, § 5034 (1977), in their analysis of the federal counterpart to OEC 103(1)(b),[5] that the better rule is not to require an offer of proof when the trial court strikes a claim or defense as a matter of law:

> "One particularly troublesome spot on the border of Rule 103(a) is found at the point where substance and procedure meet. Suppose, for example, that a plaintiff offers evidence of the wealth of the defendant on the theory that he is entitled to punitive damages. The evidence violates none of the specific rules of evidence such as hearsay or privilege, but the judge excludes it because he disagrees with the plaintiff's claim that he can recover punitive damages. Must the plaintiff make an offer of proof to preserve the point for appeal? It can be argued that this is a ruling on relevance, now that the Rules have merged the concepts of relevance and materiality, and that therefore the offeror must comply with Rule 103. On the other hand, if the ruling had been made prior to trial, say on a motion to strike the prayer for punitive damages, no one would contend that the plaintiff would have to offer proof at

---

[4] OEC 103(1)(b) provides in part:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

"* * * * *

"(b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

[5] FRE 103(a)(2) provides:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"* * * * *

"(2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

That section is identical to the material portions of OEC 103(1)(b), quoted *ante* at note 4, and the Oregon rule is based on the federal one. Kirkpatrick, Oregon Evidence 13-17 (2d ed 1989). That being so, federal authorities construing the federal rule are useful in analyzing the Oregon rule. *See, e.g., State v. Moen,* 309 Or 45, 58-60, 786 P2d 111 (1990) (in interpreting OEC 803(4), this court considered federal authorities concerning the identical words of FRE 803(4)).

trial to preserve the error for review. There seems to be no good reason why the prerequisites for appeal should vary simply because the judge makes the substantive error at trial rather than earlier. The pre-existing caselaw does not seem to have reached any clean-cut resolution of this point but it seems likely that many of the cases creating an exception to the requirement of an offer of proof when the ruling of the trial judge made such an offer futile would, on inspection, be found to fall into this category." (Footnotes omitted.)

The trial court's ruling had an effect on the presentation of evidence, but it was not primarily an evidentiary ruling.

■ One purpose of an offer of proof is to assure that appellate courts are able to determine whether the ruling was erroneous. *State v. Affeld, supra,* 307 Or at 128. When the trial court rules that a party may not present any evidence on a defense, on the ground that the defense is unavailable as a matter of law, that purpose is fulfilled without the need for an offer of proof. In this situation, an offer would give us no additional information that bears on the *legal* question of the availability of the defense.

Another purpose of an offer of proof is to assure that the trial court can make an informed decision. An offer of proof permits the parties to raise additional arguments, if appropriate, and gives the court an opportunity to reconsider its ruling and correct any error. *Booth-Kelly Lumber Co. v. Williams,* 95 Or 476, 483, 188 P 213 (1920); I Wigmore, Evidence 858, § 20a (Tillers ed 1983). The parties in this case fully argued the merits of the legal issue, and there is nothing to suggest that an offer would have altered the court's analysis. Indeed, an offer would not have been responsive to the state's motion, which framed only the broad *legal* issue. When the trial court excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile.

■ We hold that defendant was not required to make an offer of proof to preserve the error that he now claims. Therefore, we turn to the merits.

This court has ruled that both DUII and DWS are strict liability offenses. That is, the state need not prove a culpable mental state as an element of either crime. *State v.*

*Miller,* 309 Or 362, 371, 788 P2d 974 (1990) (DUII); *State v. Buttrey,* 293 Or 575, 586, 651 P2d 1075 (1982) (DWS).

*State v. Maguire,* 78 Or App 459, 717 P2d 226 (1986), *aff'd without opinion by an equally divided court* 303 Or 368, 736 P2d 193 (1987), held that the defense created by ORS 161.295 is not available to a defendant who is charged with DUII. We allowed review in this case to reconsider that issue with a full seven-member court.

Oregon has two statutes that govern the effect of a mental disease or defect on criminal liability. ORS 161.295 provides:

"(1)  A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2)  As used in chapter 743, Oregon Laws 1971 [Oregon Criminal Code], the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

ORS 161.300 provides:

"Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."

We will discuss ORS 161.300, not because its application is directly at issue, but because it sheds light on the meaning and effect of ORS 161.295.

■      ORS 161.300 allows a defendant to introduce evidence of mental disease or defect to negate "the intent which is an element of the crime." One who succeeds in persuading the trier of fact with evidence admitted under this section is not guilty of the crime charged, because a necessary element of the crime is not established. If a crime, such as DUII or DWS, contains no element of a culpable mental state, then, logically, evidence that bears on intent cannot be material to any issue covered by ORS 161.300. Evidence of a mental disease or defect that is offered on the issue of intent would not, there-

fore, be admissible under ORS 161.300 in a case charging a strict liability crime.

■ In contrast to ORS 161.300, ORS 161.295 presupposes that the state has proved all elements of the crime, whatever they may be: the effect of proving a mental disease or defect is that the defendant is *"guilty* except for insanity." (Emphasis added.) *See, e.g.,* ORS 161.325(2) (in specified circumstances, a trial court must determine on the record the offense of which the person otherwise would have been convicted). Intent has either been proved beyond a reasonable doubt or dispensed with in the definition of the offense; in either event, the crimes are analytically on equal footing with respect to ORS 161.295. In this connection, we note that a person who is found "guilty except for insanity" under ORS 161.295, unlike a person who defends successfully under ORS 161.300, is not acquitted. Instead, the statutes provide for dispositional alternatives other than imprisonment, including the possibility of confinement and supervision by the Psychiatric Security Review Board (PSRB). ORS 161.325 to 161.351.

■ The legislative history of ORS 161.295 underscores the contrast between it and ORS 163.300. ORS 161.295 was enacted originally as part of the 1971 revisions to the Oregon Criminal Code. Or Laws 1971, ch 743, § 36. Before its amendment in 1983, Or Laws 1983, ch 800, § 1, the statute permitted a finding that a defendant was "not responsible by reason of mental disease or defect." Even in that form, the statute differentiated between the defense of guilty except for insanity and the negation of intent. Professor George Platt explained the distinction between sections 36 (now ORS 161.295) and 37 (now ORS 161.300) of the proposed law. The minutes of the meeting of February 19, 1971, of the Senate Committee on Criminal Law and Procedure refer to section 36 as "[m]ental disease or defect excluding responsibility." At that meeting, Platt said that section 36 changed the test for responsibility from the M'Naghten rule to the rule expressed in the Model Penal Code, and he explored at length the various tests used in different jurisdictions. He noted that only about two percent of those defendants whose cases come to trial assert an insanity defense. The minutes then discuss section 37 and include these observations:

> "Professor Platt said that section 37 is not the responsibility defense, it is a defense where the mental disease or makeup

of the defendant may interfere with his ability to form the particular kind of intent required as a material element of the crime. * * *

"* * * * *

"* * * The provision in section 37 is not temporary insanity, it is not insanity at all; it is a mental disease or defect which interferes with the ability to form a particular intent. This is not a lack of responsibility *which will excuse crime of any sort;* it will excuse only crime charged which requires the state show a specific mental element." Minutes, Senate Committee on Criminal Law and Procedure, February 10, 1971, p 3 (emphasis added).

*See also* Commentary to Proposed Oregon Criminal Code 37, § 37 (1970) (section applies when a defendant is charged "with a crime which includes an element such as specific intent or premeditation"). That discussion implies that the defense in section 36 (which became ORS 161.295) excuses responsibility for a "crime of any sort," whereas section 37 (which became ORS 161.300) applies only to a crime "which requires the state to show a specific mental element."

Now the statute calls for a finding that the defendant is "guilty except for insanity." ORS 161.295. In making that change, the legislature understood that the new terminology recognizes even more explicitly that a defendant who is found guilty except for insanity has committed all elements of the crime, although the defendant is to be treated differently at the dispositional stage of the proceedings. For example, Donald Turner, Professor of Law at Willamette University, told the Senate Judiciary Committee that the concept of the defense is that people who establish it are not criminally responsible "for the crime" that they otherwise have committed. Minutes, Senate Judiciary Committee, June 29, 1983, p 8. Jeffrey L. Rogers, an attorney who was then also a "part-time professor of Psychiatry at [Oregon Health Sciences University]," testified before the House Judiciary Committee that the new plea "would indicate to the community and the jury that the person committed the crime and intended to except he is not fully guilty because he was legally insane." Minutes, House Committee on Judiciary, May 13, 1983, p 4. Rogers' written testimony explained the effect of the change in more detail:

"I believe the new term does in fact more accurately describe

the process as it currently exists in the Oregon statutes. O.R.S. 161.295 provides that a person is not responsible for 'criminal conduct' if he meets the rest of the insanity defense test. Before the question of whether the person is responsible or not need arise, the evidence has to prove criminal conduct. Criminal conduct means an act or omission and its accompanying culpable mental state. *See* O.R.S. 161.085(4) and O.R.S. 161.095."

In addition to stating the requirements for proving culpable mental state, ORS 161.095 contains an exception "as provided in ORS 161.105." ORS 161.105 acknowledges that certain crimes do not require proof of a culpable mental state. In other words, Rogers testified, the defense applies after all elements of the crime have been proved; those elements do not always include a culpable mental state. The legislative history thus supports our reading of the differing scope of ORS 161.300 and ORS 161.295 and of the broader application of the latter.

The dissent in *State v. Maguire, supra,* explained the difference between culpable mental state and insanity this way:

"The concepts of culpable mental state and insanity are distinct. Culpable mental state is an element of a crime that the state must prove. Insanity is an affirmative defense that a defendant must prove to avoid criminal responsibility. Proving the requisite culpable mental state for a crime does not relieve the state from responding to an insanity claim from a defendant. That the state may not need to prove a culpable mental state does not, it seems to me, mean that a defendant cannot show that she was insane. That the state may be relieved of its burden of proving that a defendant acted diligently, recklessly, knowingly or intentionally, has nothing to do with whether she is able by reason of mental disease or defect to conform her conduct to the requirements of the law. The two are not antitheses. As LaFave and Scott, *Criminal Law,* 270 § 36 (1972), say: ' "[T]he insanity defense is broader than the *mens rea* concept," as evidenced by the fact that the defense would in theory even be available in a prosecution for a strict liability crime which required no proof of the defendant's mental state.' (Footnote omitted.) *See also* Hall, *General Principles of Criminal Law,* 342 (2d Ed 1960)." 78 Or App at 467 (Warden, J., dissenting).

We agree with those observations.

Finally, we examine the effect of ORS 161.035(2), which provides, as relevant here:

*"Except as otherwise expressly provided, or unless the context requires otherwise,* the provisions of chapter 743, Oregon Laws 1971 [Oregon Criminal Code], shall govern * * * the construction and application of any defense to a prosecution for [any offense defined outside chapter 743, Oregon Laws 1971]." (Emphasis added.)

DUII and DWS are offenses defined outside the Oregon Criminal Code. ORS 813.010; ORS 811.182. Mental disease or defect constituting insanity under ORS 161.295 is an affirmative defense[6] found in the Oregon Criminal Code. Therefore, ORS 161.295 governs in prosecutions for DUII and DWS unless one of the emphasized exceptions applies. The first one plainly does not. No express provision takes DUII, DWS or strict liability crimes in general outside ORS 161.295.

The next question is whether "the context requires" that ORS 161.295 shall not apply in DUII and DWS cases. ORS 161.035(2). We have already analyzed why the general context of ORS 161.295 does not suggest that strict liability crimes, including these, are excepted from its reach. We must also decide whether the specific context of the DUII and DWS statutes requires that the defense of guilty except for insanity be unavailable.

We recognize that the legislature has manifested grave concern for the risks associated with the behavior forbidden by the DUII and DWS statutes and that it passed those laws to promote public safety. *State v. Miller, supra,* 309 Or at 368-69; *State v. Buttrey, supra,* 293 Or at 584. Does its goal of enacting strong public safety measures mean that the legislature also meant to prohibit ORS 161.295 from applying to DUII and DWS prosecutions? We believe that the answer is no, because the disposition of a defendant who is found guilty except for insanity contains substantial safeguards to protect the public in those rare instances when that would be the verdict.

ORS 161.327(1) provides that the defendant shall be

---

[6] ORS 161.305 provides:

"Mental disease or defect constituting insanity under ORS 161.295 is an affirmative defense."

committed to a mental health facility and placed under the jurisdiction of the PSRB, if "the person would have been guilty of a felony, or of a misdemeanor during a criminal episode in the course of which the person caused physical injury or risk of physical injury to another" and if the person "presents a substantial danger to others." In that event, the defendant will remain under the PSRB's jurisdiction for a period equal to the maximum sentence available for the crime for which the person was found guilty except for insanity. ORS 161.327(1). The legislature has defined the most serious DWS offenses as felonies, ORS 811.182(1), to which the commitment alternative could apply. Although DUII is a misdemeanor, ORS 813.010(3), as are some forms of DWS, ORS 811.182(2), it is likely that in most cases the defendant causes at least a risk of physical injury to another, making the commitment alternative available if the other statutory criterion is met.

■ Another part of the answer lies in the Oregon Vehicle Code. There, the legislature has designed additional procedures for defendants who are found guilty except for insanity of traffic offenses. ORS 809.410(23) provides:

> "Upon notification by a court under ORS 153.625 that a person charged with a traffic offense has been found guilty except for insanity and committed to the jurisdiction of the Psychiatric Security Review Board, the [Motor Vehicles Division of the Department of Transportation] shall immediately suspend the driving privileges of the person. A suspension under this subsection is subject to a post-imposition hearing under ORS 809.440 and shall continue until such time as the person establishes eligibility under ORS 807.090."

ORS 153.625 provides in part:

> "(1)   The judge or clerk of every court of this state having jurisdiction of any traffic offense, as defined for the Oregon Vehicle Code, including all local and municipal judicial officers in this state:
>
> "* * * * *
>
> "(c)   Shall send the division a copy of any final judgment finding a person charged with a traffic offense guilty except for insanity and committed to the jurisdiction of the Psychiatric Security Review Board."

The Oregon Vehicle Code includes ORS chapters 801 to 822,

ORS 801.010, thereby encompassing both the DUII and DWS statutes. "Traffic offense" means "[a]ny provision of law for which a criminal or traffic infraction penalty is provided in the vehicle code." ORS 801.555(2). DUII and DWS are provisions of law for which criminal penalties are provided in the vehicle code. ORS 813.010(2) and (3); ORS 813.020; ORS 811.182(3) and (4). Consequently, a person found guilty except for insanity of DUII or DWS and committed to the jurisdiction of the PSRB would immediately lose driving privileges, if the defense were available and were asserted successfully.

The legislative history of ORS 153.625(1)(d) and ORS 809.410(23) demonstrates an awareness that those sections might apply to DUII and DWS. Those sections were enacted as Oregon Laws 1987, chapter 137, sections 1 and 4, which began as House Bill 2063. The Motor Vehicles Division asked that the bill be introduced. The prior law did not require courts to notify the Division of the disposition of a traffic offense except in the case of a conviction, and there was no provision for automatic suspension of the license of a person found guilty except for insanity. ORS 153.625 (1985); ORS 809.410 (1985). The Division wanted to know when a person is found guilty except for insanity and wanted a provision for immediate suspension, in order to promote public safety and prevent claims against the state. Minutes, House Judiciary Committee, January 19, 1987, Ex. B.

In the course of hearings on the bill, there was discussion of both DUII and DWS. Tony De Lorenzo of the Motor Vehicles Division testified that

"the essence of the bill is to require the courts to notify DMV [*sic*] when a person is found guilty of DUII, except [for] insanity, with added language that requires the court to notify DMV [*sic*] if, and only if, they commit the person to the jurisdiction of the Psychiatric Security Review Board. This is done only if the court determines that they are a threat to the public." Minutes, House Judiciary Subcommittee, March 6, 1987, p 9; *see also* Exhibit R.

De Lorenzo estimated that the bill would affect 6 to 12 people per year. Minutes, Senate Committee on Judiciary, April 28, 1987, p 1.

In the House Judiciary Committee, Representative

Miller asked whether HB 2063 might help solve "the problem of driving while suspended. It seems there are a lot of those people who are not yet declared mentally unstable." Bradd Swank of the State Court Administrator's Office, who spoke next, said that the test for guilty except for insanity under ORS 161.295 "is a different question than the question of mental competence." Minutes, House Judiciary Committee, January 19, 1987, p 7. In response to a question from the chair of the Senate Judiciary Committee, its counsel stated that the term "offense" in HB 2063 would include crimes as well as infractions, so long as the offense were traffic-related. Minutes, Senate Committee on Judiciary, April 28, 1987, pp 1-2. There appears to have been no discussion, either in committees or on the floor of either chamber, of any specific traffic offenses that might be covered, other than DUII and DWS.

The legislative history behind HB 2063 thus suggests that the legislature thought that DUII and DWS were among the traffic offenses to be affected. At the same time, the state of the law when HB 2063 passed was that the defense of guilty except for insanity did not apply to DUII. *State v. Maguire, supra. See* Letter from Metropolitan Public Defender to House Judiciary Subcommittee No. 2, February 27, 1987. *State v. Buttrey, supra,* which held that DWS is a strict liability crime, had been decided about five years earlier. By extension of the reasoning in *Maguire,* the defense of guilty except for insanity also did not apply to DWS.

The legislature did not expressly overrule *State v. Maguire, supra.* If the question before us were whether HB 2063 impliedly overruled *Maguire,* so that the new statutes automatically applied to DUII and DWS, the answer would be no. Our inquiry, however, is narrower; it is whether the context of DUII and DWS compels the conclusion that ORS 161.295 shall not apply. ORS 161.035(2). The expressed assumption that HB 2063 would address DUII and DWS, among other traffic offenses, is some evidence that the concept of the defense of guilty except for insanity in that context did not trouble the legislature and that it did not intend to prohibit the application of the defense.

In view of the alternative means to protect society from dangerous drivers, the context of the DUII and DWS statutes does not compel the conclusion that the legislature

meant to make the defense of guilty except for insanity unavailable to the small number of defendants who otherwise could take advantage of it. The defense outlined in ORS 161.295 is not one that negates an element of a crime or precludes proof of criminal conduct. It is, rather, a legislatively expressed policy that a defendant, even though he or she is guilty of a crime and has carried out all of its elements, is not to be punished as a criminal if the conduct results from a mental disease or defect.[7] The statutes make no exception for the crimes of DUII and DWS.[8] We hold that the defense of guilty except for insanity, ORS 161.295, is available to persons charged with DUII and DWS.

The decision of the Court of Appeals and the judgment of the district court are reversed, and the case is remanded to the district court for a new trial.

**GILLETTE, J.,** dissenting.

In *State v. Maguire,* 78 Or App 459, 717 P2d 226 (1986), *aff'd without opinion by an equally divided court* 303 Or 368, 736 P2d 193 (1987), a closely-divided Court of Appeals, sitting *en banc,* held that the defense created by ORS 161.295[1] was not available to defendants charged with driving under the influence of intoxicants (DUII), because that offense did not require a culpable mental state. In spite of the fact that I was the author of the opinion for the Court of Appeals majority in that case, I should be willing to abandon *Maguire* if I

---

[7] This sentence captures the principal disagreement between the majority and the dissent. The dissent asserts that the statutes permit the punishment of some persons for criminal conduct, even though their conduct results from a mental disease or defect.

[8] A defendant who, because of a mental disease or defect, genuinely believes that he is setting out to fly to Mars and that the Queen of England ordered him to do it is guilty except for insanity of his resulting criminal conduct, whether it be driving a car under the influence of intoxicants, or without a license, or assaulting a bus driver who, in his world, is the disobedient pilot of Her Majesty's spaceship.

[1] ORS 161.295 provides:

"(1) A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

were persuaded that it was decided incorrectly. *See State v. Isom,* 306 Or 587, 597-98, 761 P2d 524 (1988) (Gillette, J., concurring). Because I am not persuaded, I dissent.

The majority's analysis of this problem[2] is in three parts: (1) a comparison of the circumstances in which ORS 161.295 becomes applicable to a particular case, as contrasted with the circumstances in which the companion statute, ORS 161.300, becomes applicable; (2) an analysis of the meaning of the specific language of ORS 161.295, in light of the foregoing comparison; and (3) an analysis of why applying ORS 161.295 to DUII cases will not endanger the public. I have no difficulty with the first section. The reasonableness of the second section, however, seems to me to depend on the correctness of the third, *viz.,* the section that purports to show that the majority's interpretation of the scope of ORS 161.295 will not result in DUII offenders being turned loose with no sanction at all for their crimes. It is the majority's analysis of that last section that — to my mind — demonstrates the error of the majority.

The issue is whether the context of the DUII statute calls for it to be exempted from the coverage of ORS 161.295. The majority holds that the context does not require such an exemption; I believe that the context does so require.

I need note only in passing the legislature's profound (and wholly justified) concern with the phenomenon of drinking and driving. The majority acknowledges the "grave concern" of the legislature as to this matter. 310 Or at 466. The majority then seeks to reassure the reader that these "grave concerns" still will be met even if a DUII offender is permitted to plead that he is guilty except for insanity. I am not reassured.

My concern is with the potential disposition of the

---

[2] I agree with the majority's handling of the preservation of error issue. At the same time, I do wish to note my strong suspicion that we here are spinning our wheels unnecessarily: If the trial judge had not ruled the defense (and, therefore, the evidence that supported it) inadmissible generically, but instead had allowed defendant to put on his offer of proof, the odds are very high that the kind of evidence defendant had in mind would not qualify to excuse defendant's conduct. That is not what happened, however, and we are now stuck (as was the Court of Appeals) with answering this very significant question without any factual context.

offender. DUII is a misdemeanor. What dispositional alternatives are available to a trial court in a case in which the defendant has been found "guilty except for insanity" with respect to a misdemeanor? The answer is "as a general matter, none."

The majority's own summary of the law in this area makes my point:

"ORS 161.327(1) provides that the defendant [found 'guilty except for insanity'] shall be committed to a mental health facility and placed under the jurisdiction of the PSRB, if 'the person would have been guilty of a felony, or of a misdemeanor during a criminal episode in the course of which the person caused physical injury or risk of physical injury to another' and if the person 'presents a substantial danger to others.' In that event, the defendant will remain under the PSRB's jurisdiction for a period equal to the maximum sentence available for the crime for which the person was found guilty except for insanity. ORS 161.327(1). The legislature has defined the most serious DWS offenses as felonies, ORS 811.182(1), to which the commitment alternative could apply. Although DUII is a misdemeanor, ORS 813.010(3), as are some forms of DWS, ORS 811.182(2), *it is likely that in most cases the defendant causes at least a risk of physical injury to another, making the commitment alternative available if the other statutory criterion is met.*"

310 Or at 467 (emphasis supplied).

I do not know where the emphasized portion of the majority opinion came from, but the generalization about DUII cases seem to me to be dangerously naive. The majority generalizes that "in most cases the defendant causes at least a risk of physical injury to another." If this is an assertion that in most DUII cases the arresting officer can point to specific risks to specific persons as a result of the defendant's driving, I respectfully suggest to the majority that it probably is wrong. Relatively speaking, I believe that most DUII arrests are based on an observation of driving that does not result in a collision or even, during the period of observation, any danger to anyone. Certainly, few such arrests occur only after a collision. (And not all collisions are with people or with other cars containing people; some are with empty cars, trees, fenceposts and the like.)

In any event, and without regard to who is closer to

the true facts surrounding most cases of DUII, even the majority admits that a number of DUII offenders are simply going to "walk" because they do not meet the first criterion of ORS 161.327(1). And the majority further acknowledges, as it must, that still more offenders will be let off because they do not meet the statute's second criterion, *viz.,* that the offender present "a substantial danger to others." While the first criterion appears to me to address the circumstances of the criminal episode that led to the defendant's arrest, this second criterion has to do with the offender, not the crime. Both criteria must be met. Thus, every offender who does not meet this second criterion by definition enlarges the pool of DUII offenders who, although guilty, receive no punishment or remedial treatment of any kind for their offense. It is telling that the majority does not even try to reassure us with respect to this second criterion. How could it?

The majority goes on to assert that "[a]nother part of the answer lies in the Oregon Vehicle Code. There, [in ORS 809.410(23),] the legislature has designed additional procedures *for defendants who are found guilty except for insanity of traffic offenses.*" 310 Or at 467 (emphasis supplied). The majority here ignores the pivotal portion of that statute. It provides:

> "Upon notification by a court under ORS 153.625 that a person charged with a traffic offense has been found guilty except for insanity *and committed to the jurisdiction of the Psychiatric Security Review Board,* the [Motor Vehicles Division] shall immediately suspend the driving privileges of the person. A suspension under this subsection is subject to a post-imposition hearing under ORS 809.440 and shall continue until such time as the person establishes eligibility under ORS 807.090."

(Emphasis supplied.) *See also* ORS 153.625 (directing that the notice be given to the Motor Vehicles Division where a person charged with a traffic offense has been found guilty except for insanity "and committed to the jurisdiction of the Psychiatric Security Review Board").

The scope of these statutes (which the majority characterize as "part of the answer") is specifically limited to the criteria under ORS 161.327(1) discussed earlier — those persons who are found guilty except for insanity but who do *not*

meet both criteria of ORS 161.327(1) walk. Their licenses are not even in jeopardy. I respectfully suggest that these statutory sections provide no "part" of any "answer" that suggests the conclusion the majority reaches.

The majority is able in the legislative history of the statutes to find only a single witness who even *assumed* — and that is all he did — that DUII was subject to ORS 161.295. Moreover, as the majority acknowledges, *State v. Maguire, supra,* was already on the books when that testimony was given. We therefore must assume, in order to accept the majority's argument, that both the witness and the legislative committee to which he spoke were ignoring *Maguire.* I find it far more plausible that the committee did not think it had to agree with the witness' description of the scope of the measure, in order to approve of it.

The majority's strained efforts to reassure the reader are a reflection of what the majority on some level recognizes — the result which the majority announces in this case does not make sense. Whatever the legislature intended in the enactment of ORS 161.295, it did not intend that the statute would permit drunk drivers to walk away scot-free from their crimes. I dissent.

Van Hoomissen, J., joins in this dissenting opinion.